866 P.2d 184

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Michael L. HODGE, Defendant–Appellant.**

**No. 20259.**

Court of Appeals of Idaho.

Nov. 30, 1993.

Petition for Review Denied Feb. 4, 1994.

Rolf M. Kehne, Boise, for appellant.

Hon. Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent.

PERRY, Judge.

Michael L. Hodge pled guilty to robbery, I.C. § 18–6501, and was sentenced to six years' minimum confinement to be followed by an indeterminate period of fourteen years. He now appeals, claiming that the district court abused its discretion in arriving at the sentence and that the sentence was impermissibly based on his race. We affirm.

## FACTS AND PROCEDURE

In April of 1992, Hodge was charged, along with co-defendants Rodney Page and Brian "B.J." Cabe, with four counts of robbery, I.C. § 18–6501; one count of burglary, I.C. § 18–1401; one count of grand theft, I.C. §§ 18–2403(1) and 2407(1); and one count of conspiracy, I.C. § 18–1701. These charges related to the robbery of numerous Boise area businesses, including Buster's Restaurant. Although Hodge initially pled not guilty, he later changed his plea to guilty on the robbery charge involving Buster's in exchange for the remaining charges being dismissed. No agreement was reached with the prosecution in regard to sentencing. The district court sentenced Hodge to twenty years in the custody of the Board of Correction, with a six-year minimum period of confinement. On appeal, Hodge alleges that the district court abused its discretion in arriving at the sentence. Hodge also alleges that the sen-

tence was impermissibly based on his race, in violation of the due process and equal protection guarantees of the United States Constitution and the Idaho Constitution.

## ANALYSIS

As a preliminary matter, Hodge requests in his brief that this Court reconsider the denial of his motions for augmentation. This matter was assigned to the Court of Appeals on October 6, 1993. The Supreme Court had previously denied Hodge's two motions to augment the record on March 26 and May 4, 1993, respectively. We find it .unnecessary and inappropriate to reconsider the denial of the motions to augment. We will, however, assume the criminal history of co-defendant Cabe is as represented by Hodge in his brief. We will also accept as fact, that Cabe was given a ten-year indeterminate sentence, with a minimum of three years' confinement.

Hodge contends that the sentencing court abused its discretion in arriving at the sentence imposed. This question has two separate prongs. First, was the sentence itself so excessive as to be an abuse of discretion? Second, was the sentence based on Hodge's race?

■■■ It is not disputed that Hodge's sentence is within the statutory maximum of life in prison permitted for robbery. I.C. § 18-6503. As is correctly noted by Hodge, appellate review of a sentence is based on an abuse of discretion standard. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). If the sentence is within the statutory limits, the appellant carries the burden of establishing that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse if it is shown to be unreasonable on the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). A sentence of confinement may be considered reasonable if it appears at the time that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982).

■■■ We next consider the length of the sentence itself. When reviewing a sentence imposed under the Unified Sentencing Act, we treat the minimum period specified by the sentencing judge as the probable duration of confinement. I.C. § 19–2513; *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct.App. 1989). Thus, we view Hodge's actual term of confinement as six years. Hodge must establish that under any reasonable view of the facts, a period of confinement of six years for his robbery conviction was an abuse of discretion. This court will not substitute its own view for that of the sentencing judge where reasonable minds might differ. *Toohill, supra.*

■■■ Upon review of a sentence, we conduct an independent examination of the record, focusing on the nature of the offense and the character of the offender. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct. App.1982). From the record, it is clear that the district court based this sentence on the extremely violent and dangerous nature of this crime, noting that "We're not going to tolerate [armed robbery] in this community." The district court also considered the fact that Hodge had previously been convicted of theft and burglary. The pre-sentence investigation report contained many letters attesting to Hodge's character and several witnesses testified on his behalf at the sentencing hearing. All these things were properly weighed by the district court and we can find nothing that shows the district court abused its discretion. Therefore, we conclude that the sentence was not unreasonable.

■■■ Second, Hodge points out that, although he and Cabe had identical criminal records and pled guilty to the same robbery, the period of incarceration to which he was sentenced was twice that imposed on Cabe. Hodge and Cabe had been friends for some time. Hodge claims that their criminal records are identical, as the only prior conviction of either relates to a burglary and theft in Alaska in which they were both involved and for which both were convicted. The only difference between Hodge and Cabe, Hodge claims, is that he is Afro–American and Cabe

is white. Given this, Hodge challenges his sentence as a violation of due process and equal protection as guaranteed by the United States and Idaho constitutions.

■ We agree with Hodge that "[a] defendant's race should never be a factor in the determination of a sentence, whether in trial for a murder or for a traffic offense." *State v. Hightower,* 120 N.J. 378, 577 A.2d 99, 119 (1990). The United States Supreme Court has said, albeit in the context of a death sentence, that "consideration of 'factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as for example the race, religion, or political affiliation of the defendant' would violate the Constitution." *Baldwin v. Alabama,* 472 U.S. 372, 382, 105 S.Ct. 2727, 2733, 86 L.Ed.2d 300 (1985), *quoting Zant v. Stephens,* 462 U.S. 862, 866, 103 S.Ct. 2733, 2736, 77 L.Ed.2d 235 (1983).

The record, however, does not show any indication that race played a part in the district court's decision. Indeed, the opposite is true. It appears that Hodge's longer sentence was not based upon his race, but was, instead, based on his individual character. At the sentencing hearing, Detective Anderson testified regarding statements Hodge made while in the presence of a "wired" informant. Anderson testified that Hodge had expressed an interest in committing more armed robberies, while Cabe had indicated he was no longer interested in that type of activity. Hodge had indicated to the informant that, at the time of the Buster's robbery, if a certain female employee had been present, he would have raped her. On another occasion, while planning a different robbery, Hodge indicated that if there were a lone female employee, he would like to rape her. He also stated that he didn't commit armed robberies for the money, but instead did it for the "high" and the exhilaration of walking through a door with a gun and a mask and commanding people to do as he said. Hodge had indicated to the informant at one point that he wished to increase the "high" and talked of getting fully automatic weapons to use in the robberies. On one occasion, Hodge indicated to his accomplices how they had to be prepared to "shoot it out" with police officers should they arrive during the robbery. Hodge also indicated to his accomplices that he would shoot them, should they turn against him as witnesses. At various points in his discussions with the informant, Hodge related details of previous robberies that were of sufficient detail to indicate he had been present during those crimes.

Although there is nothing in the record to indicate that the district court based its decision on race, there is ample evidence that the district court considered the character of Hodge as demonstrated by his own statements and other evidence. It is worth quoting the colloquy of the district court at length:

[BY THE COURT] Well, Mr. Hodge there is a lot of things thrown at me in here today. I'll tell you what I know about you for sure.

One, you're a young man, 21 years old, and that you have a very good family support, and you have a lot of friends in this community; and that you have the talent, you probably could be anything you wanted to be.

I also know that you've had a year of college, which is probably more than most of the people that come in front of me. I also know that you have a prior record of two felonies. You might say they were kid's stuff, but they were apparently more serious than kid's stuff; and that you've come in here in front of me now.

I also know for one reason or another you talked about a lot of robberies you were involved in, and the police audited those robberies.

Now, whether you committed these robberies, I don't know, and I don't think that it's too important in my case. But you knew a lot of facts about these robberies that led me to believe you had a lot of knowledge and involvement whether or not you were there, and of course no one can help but expect to think that you were there, at least part of them.

But I know you were there at this one at the Bar & Grill, and I know that ... the victim, was very traumatized by this, as I

expect everybody involved in these robberies are....

He wants you to get the maximum sentence. And, "They were involved in more robberies that became more violent, and there was talk of even raping one woman." I gather he got this from all the tapes. I'm not saying that that was done or anything.

All right. I know these things. I know that you, by your conduct, have terrorized this community, at least to the extent of that man. I know there are other people that are frightened of you.

You apparently planned and schemed the robbery. You went in there wearing masks, and you threatened the bartender with the gun and a club and made him get down on the ground. And you took the money.

I know that you have a lot of charm, because the probation officer, Mr. Woods, is a very fine man, and I believe a great deal of what he says. He certainly thinks that you were an excellent probationer even though you were involved in this all during the time.

I think that the gentleman that came in here that's helped you and visited with you in the jail was certainly—I guess he's a minister. I'm not sure. But whatever he is, he's a very fine man, and I expect his statements have a very great deal of credibility.

Now, what am I going to do? I know that much about you. We've heard lots about you. I have stacks of letters that are in your favor. I have people that say you ought to be shot because of your conduct.

Now, what do I do as a representative of the public out here? We can't tolerate armed robberies in this community; no question, ifs, ands, or buts. I'm not going to put up with it for anybody. You'd be one of the first ones—you or your family in here—if somebody stuck a shotgun in your face, whether it was loaded or unloaded, and made you get down on the floor and had a club and threatened to beat you and all of these sort of things, you'd want me to do something.

We're not going to tolerate it in this community. You should have known better. You should have learned better, and you certainly should have learned something from being out on probation and given leniency on the vandalism of the schools up there in Alaska, because Alaska isn't LA. It's certainly a conservative-type community and probably has a similar-type attitude as the Idaho communities. Since I have a lot of my family up there, I suspect that's true.

Well, I'm not going to tolerate it. I'm not going to put up with it, and I hope these people will give you the same backing and support after I enter my sentence.

There's nothing from these tapes that can't help but lead me to believe that you were involved in the planning, scheming, and operations of this matter, and I think a judgment is properly warranted that is greater than the other gentleman I sentenced.

So I'm going to sentence you to the custody of the Idaho State Board of Correction under the Unified Sentence Law of the State of Idaho for an aggregate term of 20 years. The Court specifies a minimum period of confinement of 6 years and a subsequent indeterminate period of custody of 14 years.

As we have noted above, the district court may consider the nature of the offense as well as the character of the offender. Even though Hodge claims that many of his statements regarding prior robberies were only bragging, his recall of specific details indicates a close personal knowledge of these incidents.

 This Court takes very seriously allegations that a criminal defendant has been sentenced differently than a co-defendant based solely on his race. In the case before us, however, these charges amount to no more than speculation. As stated in the Hodge's Reply Brief, "Mr. Hodge personally wonders how big a factor is the fact that Cabe is caucasian and Mr. Hodge is Afro-American." The amount and quality of the evidence presented at the sentencing convince us that this sentence was not based on race, but rather on proper considerations.

Speculation about the possibility of racial discrimination, with nothing in the record to support it, is not enough in itself to show there has been a constitutional violation.

It was within the district court's discretion to consider all the factors outlined above. Although Cabe and Hodge may have had identical records and were charged with identical offenses, the district court obviously found that Hodge was a much greater danger to society than Cabe.

Given the above factors, we cannot say that the district court abused its discretion in sentencing Hodge, nor do we find any violation of due process or equal protection in this case. Accordingly, the judgment of conviction and sentence are affirmed.

WALTERS, C.J., and LANSING, J., concur.