30 P.3d 975

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Elias Manuel CUSTODIO, Defendant–Appellant.**

No. 25340.

Court of Appeals of Idaho.

May 15, 2001.

Review Denied Aug. 8, 2001.

Ronaldo A. Coulter, State Appellate Public Defender; Molly J. Huskey, Deputy Appellate Public Defender, Boise, for appellant. Molly J. Huskey argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

PERRY, Judge.

Elias Manuel Custodio appeals from his judgments of conviction and sentences for voluntary manslaughter, I.C. § 18–4006(1); involuntary manslaughter, I.C. § 18–4006(2); aggravated battery, I.C. §§ 18–903(a), 18–907(b); burglary, I.C. § 18–1401; and sentence enhancements for use of a deadly weapon during the commission of the crimes. I.C. § 19–2520. We affirm in part, vacate in part, and remand.

## I.

## BACKGROUND

On the morning of March 1, 1998, Custodio accompanied a co-worker to a house located in Boise. Sometime shortly thereafter, Custodio was involved in an altercation with one of the persons present at the house and was asked to leave. Custodio left the house, but returned a short time later with a baseball bat in hand and a gun tucked in his waistband. A fight quickly ensued, during which Custodio shot and killed two men and wounded a third individual.

Custodio was arrested and charged with two counts of first degree murder, attempted murder in the second degree, aggravated battery, burglary, and sentence enhancements for use of a deadly weapon during the

commission of the crimes. Custodio pled not guilty to all counts. Prior to trial, Custodio moved to suppress the statements contained in a videotaped interview with the police. The district court denied the motion following a hearing. The state filed a motion in limine seeking to prohibit Custodio from admitting character evidence concerning the victims' propensities for violence. The district court partially granted the state's motion, ruling that evidence concerning the victims' propensities for violence would be limited at trial to reputation and opinion testimony. Custodio then moved for a change of venue, which was denied by the district court.

A jury found Custodio guilty of voluntary manslaughter, involuntary manslaughter, aggravated battery, and burglary. In addition, the jury found that Custodio had used a deadly weapon in committing the first three offenses. The district court imposed an aggregate unified sentence of thirty years, with a minimum period of confinement of fifteen years. Custodio moved for a new trial on the basis of newly discovered evidence. Following a hearing, the district court denied the motion.

Custodio appeals, challenging the district court's denial of his motion to suppress, the district court's denial of his motion for change of venue, the district court's ruling limiting character evidence of the victims, and the district court's denial of his motion for a new trial. In addition, Custodio asserts that the district court imposed an illegal sentence or, in the alternative, that the district court abused its discretion in imposing his sentences.

## II.

## ANALYSIS

### A. Motion to Suppress

On appeal, Custodio argues that the district court erred in denying his motion to suppress the statements contained in his videotaped interview with the police. Custodio contends that these statements should have been suppressed because they were taken without first obtaining a valid waiver of his Miranda[1] rights. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. State v. Atkinson, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. State v. Valdez Molina, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); State v. Schevers, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

When statements made by a defendant during the course of an in-custody interrogation are offered at trial, the state must establish a voluntary, knowing and intelligent waiver of the suspect's rights. State v. Luke, 134 Idaho 294, 297, 1 P.3d 795, 798 (2000). A trial court's conclusion that a defendant made a knowing and voluntary waiver of his or her Miranda rights will not be disturbed on appeal where it is supported by substantial and competent evidence. Luke, 134 Idaho at 297, 1 P.3d at 798. Whether a defendant knowingly and intelligently waived his or her Miranda rights is measured by reviewing the totality of the circumstances surrounding the waiver. State v. Dunn, 134 Idaho 165, 169, 997 P.2d 626, 630 (Ct.App.2000).

It is undisputed that Custodio signed a wavier of his Miranda rights prior to being questioned by the police. An express written statement waiving Miranda rights is strong, but not conclusive, evidence of voluntary waiver. State v. Mitchell, 104 Idaho 493, 497, 660 P.2d 1336, 1340 (1983). However, Custodio contends that he was intoxicated, fatigued, and in pain at the time that he signed the form. Custodio also asserts that the officers read him his rights in an extremely cursory manner, thereby minimizing the significance of the waiver. In light of these factors, Custodio asserts that he did not knowingly and intelligently waive his Miranda rights.

This Court has previously recognized that intoxication is one circumstance which must be considered in evaluating whether

---

1. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

under the totality of the circumstances a defendant's waiver was valid. *See State v. Alger,* 115 Idaho 42, 46, 764 P.2d 119, 123 (Ct.App.1988). However, evidence of intoxication does not automatically signify that a waiver is invalid. *Id.* In this case, the district court noted that the evidence submitted at the evidentiary hearing regarding Custodio's intoxication was in conflict. However, after reviewing the videotape of the interview and listening to the testimony presented at the evidentiary hearing, the district court concluded that Custodio was not under the influence of alcohol to an extent which impaired his ability to execute a valid waiver of his *Miranda* rights.

■ A review of the videotape of Custodio's interview with police shows Custodio to be fully responsive to the questions propounded to him. Custodio's answers were coherent and understandable. At one point during the interview, Custodio snatches a flying insect out of the air, a task requiring a substantial amount of motor coordination. Although Custodio's treating physician at the hospital deemed him to be "very intoxicated," this physician also testified that Custodio appeared alert and oriented while he was being treated. Thus, the record supports the district court's finding.

■ Custodio next claims that his fatigue precluded him from entering a knowing and intelligent waiver of his *Miranda* rights. In its order denying Custodio's motion to suppress, the district court acknowledged that Custodio appeared tired during the interview, but determined that this fatigue did not render Custodio incapable of validly waiving his *Miranda* rights. The videotape shows that Custodio responded effectively to the questions posed by the officers. When asked to spell his surname, Custodio did so quickly and correctly. At one point, Custodio even joked with the officers indicating his desire for a cot. Based on this evidence, we conclude that there was substantial and competent evidence to support the district court's finding regarding this factor.

■ Custodio also asserts that his waiver was involuntary in light of the pain that he was experiencing at the time that he executed the waiver. The videotape reveals that Custodio never indicated to the police any physical discomfort other than general fatigue. In addition, Custodio's treating physician at the hospital described Custodio's injuries as "superficial abrasions and cuts." Thus, we conclude that Custodio's assertion that he was in pain to such an extent that it interfered with his ability to waive his *Miranda* rights is without merit.

■ Finally, Custodio asserts that the waiver was invalid because of the cursory manner in which he was read his *Miranda* rights and presented with the waiver form. Although the district court found that the officer took a casual approach in presenting Custodio with the *Miranda* waiver, the district court nonetheless determined that the officer had appropriately read Custodio his rights and informed him that if he did not understand any of these rights that they would be explained further to him. Our review of the record supports the district court's findings.

We conclude that there was substantial and competent evidence to support the district court's factual findings. Therefore, we hold that Custodio has failed to show that the district court erred in denying his motion to suppress.

## B. Motion for Change of Venue

Custodio's motion for change of venue alleged that pretrial publicity had been extraordinary and inflammatory. Because of the numerous newspaper articles regarding this case, Custodio asserted that juror impartiality would be adversely affected. Custodio argues on appeal that it was error for the district court to deny the motion for change of venue.

■ A trial court's decision on a motion to change venue is discretionary in nature. *State v. Gray,* 129 Idaho 784, 800, 932 P.2d 907, 923 (Ct.App.1997). Error in regard to a trial court's denial of a motion for change of venue cannot be predicated on the mere existence of pretrial publicity concerning a criminal case. *Id.* Instead, the validity of a court's decision to try a case in a particular venue is tested by whether, in a totality of existing circumstances, juror exposure to pretrial publicity resulted in a trial that was

not fundamentally fair. *State v. Hyde,* 127 Idaho 140, 145, 898 P.2d 71, 76 (Ct.App.1995). Factors to be considered in determining whether the defendant has received a fair trial, and thus whether denying the motion for change of venue was an abuse of discretion, include: evidence of a prejudice in the community, testimony at voir dire as to whether any juror had formed an opinion of the defendant's guilt, whether the defendant challenged for cause any of the jurors finally selected, the nature and content of the pretrial publicity, the length of time elapsed between the pretrial publicity and the trial, and any assurance given by the jurors themselves concerning their impartiality. *State v. Jones,* 125 Idaho 477, 484, 873 P.2d 122, 129 (1994); *Gray,* 129 Idaho at 800, 932 P.2d at 923.

In conjunction with the motion, Custodio submitted a number of newspaper articles containing reports of the crime and pictures of the individuals involved. However, Custodio submitted no affidavits demonstrating community prejudice arising from the media coverage. The district court questioned the potential jurors at length during voir dire regarding the effect of pretrial publicity. Only twelve of the initial forty potential jurors stated that they had prior knowledge of Custodio or of the crime by way of the media. Of the twelve potential jurors who admitted to having heard of the case through the media, all but three of these jurors stated that this information would have no impact on their ability to serve as an impartial juror in this case. The three jurors who were unwilling or unable to remain impartial due to the pretrial publicity were excused for cause. We note that one of the three jurors excused for cause was excused due to bias in favor of the defense. Furthermore, over seven months had passed between the date of the offense and the beginning of Custodio's trial. In addition, neither the prosecution nor the defense expressed any dissatisfaction with the twelve jurors eventually impaneled. The district court considered the nature and content of the pretrial publicity before ruling on Custodio's motion. After reviewing the articles submitted by Custodio, the district court determined that much of the pretrial media coverage was of an innocuous nature. Upon review of the record, we conclude that Custodio has failed to show that the district court abused its discretion in denying the motion for change of venue.

## C. Character Evidence of the Victims

Custodio argues that the district court improperly excluded the testimony of a defense witness relating to a specific instance of prior aggressive conduct on the part of the victims. Specifically, the challenged evidence would have portrayed the stabbing of the witness by the victims in the instant case as being racially motivated. Custodio presents three arguments in support of the admissibility of this evidence. We will address each of these arguments in turn.

Custodio first argues that the evidence should have been admitted pursuant to I.R.E. 404(a)(2). Generally, evidence of a person's character or a trait of character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion. Rule 404(a). An exception to this rule, however, is provided for in Rule 404(a)(2), which states that a defendant may use evidence of a pertinent trait of character of the victim to show that the victim acted in conformity therewith. Custodio asserts that the evidence was admissible under Rule 404(a)(2) in order to raise an inference that the victims acted consistently with their propensities of violence on the morning the shootings occurred, thus bolstering Custodio's claim of self-defense.

The district court ruled that evidence relating to the victims' propensities for violence was admissible in light of Custodio's self-defense claim. However, because the challenged evidence was not in the form of reputation or opinion, but instead related to a specific instance of conduct, the district court excluded the challenged evidence pursuant to I.R.E. 405.

Custodio asserts that Rule 405 explicitly allows for proof of character through the introduction of evidence of specific instances of conduct as long as the character trait is an essential element of the charge, claim, or defense. Custodio contends that the victims' propensities for violence was an essential element of his claim of self-defense and, thus,

that the district court erred in excluding the evidence pursuant to Rule 405.

Because the district court ruled that character evidence pertaining to the victims' propensities for violence was admissible in the form of reputation or opinion testimony, we limit our review to the issue of whether the district court erred in excluding proof of the victims' propensities for violence through evidence of this specific instance of conduct pursuant to Rule 405. Rule 405 provides:

(a) Reputation or Opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(b) Specific Instances of Conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of the person's conduct.

Thus, Rule 405(b) allows for proof of a person's character through the introduction of evidence concerning specific instances of conduct in certain cases. However, in order for proof of person's character to be admissible in the form of specific instances of conduct the character trait must be an essential element of a charge, claim, or defense. Therefore, we must determine whether a victim's propensity for violence is an essential element of a claim of self-defense.

■■■ The Ninth Circuit Court of Appeals addressed this issue in *United States v. Keiser*, 57 F.3d 847 (9th Cir.1995). The court in *Keiser* determined that "the relevant question should be: would proof, or failure of proof, of the character trait by itself actually satisfy an element of the charge, claim, or defense? If not, then character is not essential and evidence should be limited to opinion of reputation." *Id.* at 856 (footnote omitted). The court in *Keiser* went on to hold that the victim's violent character did not constitute an essential element of a self-defense claim. *Id.* at 857. We agree. Proof of a victim's propensity for violence, standing alone, does not prove an element of a claim of self-defense. Proof of a victim's violent character does not show that the victim was the first

aggressor in a particular conflict, nor does proof of a victim's passive demeanor foreclose the defendant from asserting a claim of self-defense.

■■■ Thus, although evidence relating to the victims' violent character was relevant for the purpose of inferring that the victims acted in conformity therewith on the morning in question, the victims' propensities for violence was not an essential element of Custodio's claim of self-defense. Therefore, Custodio has failed to show that the district court erred in excluding this evidence in the form of a specific instance of the victims' propensities for violence pursuant to Rule 405.

■■■ Custodio next asserts that the challenged evidence was admissible under I.R.E. 404(b), because this evidence tended to prove that the victims had a motive, intent, or plan to lure Custodio to their residence in order to attack him. Because of the similarities between the stabbing incident and his case, Custodio claims this evidence raised an inference that the victims planned to attack him and that the attack was racially motivated. Rule 404(b) allows for the admissibility of evidence of other crimes, wrongs, or acts provided that the evidence is admitted for a purpose other than to show that the person acted in conformity therewith on a particular occasion. Specifically, Rule 404(b) states that this evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The district court determined that there was "nothing before this court that would suggest somehow Mr. Custodio was lured to this location by either of the decedents, so I'm not sure how there is a common scheme or plan." After thoroughly reviewing the record, we agree with the district court's determination. Custodio argued that the similar factual circumstances surrounding the earlier alleged stabbing and the instant crimes created an inference that both of the events were part of a common plan or scheme by the victims. However, Custodio failed to provide any further evidence to support this claim. We note that there is nothing in the record to suggest that Custo-

dio was lured to the victims' residence or was otherwise the involuntary participant in a common scheme or plan on the part of the victims. In his interview with the police, Custodio indicated that he went to the victims' residence to meet girls. Custodio also indicated that he was present at the house for several minutes before any confrontation ensued, during which time he asked for and received a cigarette and used the victims' restroom. The record further indicates that Custodio's arrival at the victims' residence was unplanned.

Based on our review of the record, we conclude that there was insufficient evidence from which to raise an inference that racial animus provoked the confrontation at the victims' residence which gave rise to the shootings. Thus, we further conclude that the district court correctly determined that Custodio was not lured to the victims' residence as part of a common plan or scheme. Therefore, we hold that Custodio has failed to show that the district court erred in excluding the challenged evidence when presented for the purpose of proving a common motive, plan, or intent on the part of the victims.

Finally, Custodio asserts that the challenged evidence should have been admitted because it was relevant to his state of mind at the time of the shootings. Because he had knowledge of the alleged stabbing incident to which the evidence pertained, Custodio asserts that the evidence went to the issue of whether his fear and actions in defending himself were reasonable.

 The admissibility of evidence of a prior bad act on the part of the victims for a purpose other than to show that the victims acted in conformity therewith is governed by Rule 404(b). In determining the admissibility of evidence of prior bad acts under Rule 404(b), this Court applies a two-prong analysis. First, the evidence must be relevant to a material and disputed issue concerning the crime charged. *State v. Pilik,* 129 Idaho 50, 53, 921 P.2d 750, 753 (Ct.App.1996). Whether evidence is relevant is an issue of law. *Id.* Therefore, when considering a district court's admission of evidence of prior misconduct, we exercise free review of the trial court's relevancy determination. *Id.* The second step in the analysis is the determination that

the probative value of the evidence is outweighed by unfair prejudice. *Id.* A court's decision that evidence is more probative than prejudicial is reviewed for abuse of discretion. *State v. Moore,* 131 Idaho 814, 819, 965 P.2d 174, 179 (1998).

 The district court made the following statements at trial:

Now, I know that on the issue of admissibility of the statements by the defendant as to what he knew, I permitted that line of questioning. And the reason is that the defendant's awareness of any alleged violent behavior, regardless of whether or not it's true or false, is relevant to evaluate the defendant's state of mind when confronted with the events that took place at the 2914 Edson Street residence.

But evidence that might tend to confirm whether those—the information that the defendant possessed is simply irrelevant. Whether it's true or false doesn't matter. It is admitted and was admitted solely to address the defendant's state of mind, or at least that was the court's intention.

Thus, the district court concluded that although Custodio's knowledge of prior violent behavior on the part of the victims was relevant, extrinsic evidence tending to prove or disprove the truth of such knowledge was not relevant because it did not affect Custodio's mental state at the time of the shootings. We agree.

The challenged evidence in this case consisted of a third person's recollections regarding an alleged stabbing by the victims. However, the recollections of a third person are, by their very nature, incapable of proving a defendant's state of mind. This Court has previously held that evidence of a victim's violent nature presented for the purpose of proving the defendant's mental state in relation to a self-defense claim is admissible only if "it is shown that the defendant was aware of the victim's violent character, for otherwise the defendant's actions could not have been influenced by it." *State v. Hernandez,* 133 Idaho 576, 585, 990 P.2d 742, 751 (Ct.App.1999). Custodio's actions in this case could not have been influenced by the evidence contained in the excluded testimony as it related solely to the perceptions and

recollections of the third person and not to Custodio's knowledge of the alleged incident. Because a person's mental state cannot be proven through a third person's recollections of a prior incident, the challenged evidence was not relevant to Custodio's mental state at the time of the shootings. For the reasons stated above, we conclude that Custodio has failed to show that the district court erred in excluding the challenged testimony.

## D. Motion for New Trial

 Custodio also asserts that the district court erred in denying his motion for a new trial under I.C.R. 34. A decision on a motion for new trial under Rule 34 is reviewed under an abuse of discretion standard. *State v. Egersdorf*, 126 Idaho 684, 687, 889 P.2d 118, 121 (Ct.App.1995). When a trial court's discretionary decision in a criminal case is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

 In support of his motion for a new trial, Custodio presented the affidavits of two new witnesses. Custodio argues that the affidavits of these two witnesses presented newly discovered evidence, which probably would have produced an acquittal if presented to a jury. Idaho Code Section 19–2406(7) permits the trial court to grant a new trial where material evidence is discovered after conviction. A motion for a new trial based on newly discovered evidence must disclose: (1) that the evidence is newly discovered and was unknown to the defendant at the time of the trial; (2) that the evidence is material, not merely cumulative or impeaching; (3) that it will probably produce an acquittal; and (4) that failure to learn of the evidence was due to no lack of diligence on the part of the defendant. *State v. Drapeau*, 97 Idaho 685, 691, 551 P.2d 972, 978 (1976); *Small v. State*, 132 Idaho 327, 334, 971 P.2d 1151, 1158 (Ct.App.1998).

In its order denying Custodio's motion for a new trial, the district court addressed the two witnesses and the evidence they presented in turn. In regard to the affidavit of the first witness, the district court found that the evidence presented was both newly discovered and material. However, the district court concluded that the evidence was of such slight incremental value that the introduction of this evidence, whether alone or in conjunction with the evidence presented by the second witness, would not probably have produced an acquittal.

 The affidavit from the first witness stated that she had seen a baseball bat at the victims' residence approximately one week prior to the shooting and that she had seen one of the victims swinging this bat on several occasions. Custodio contends that this would counter the state's evidence that he brought the bat into the victims' home. However, in her affidavit the witness stated her inability to describe the bat with particularity. In addition, the affidavit indicated that the witness had no personal knowledge of the events that gave rise to the crimes of which Custodio had been found guilty. Thus, Custodio has failed to show that the district court abused its discretion in determining that this evidence would not probably have produced an acquittal.

The district court next addressed the evidence attributable to the second witness. At the evidentiary hearing on the motion for a new trial, the second witness testified that he witnessed Custodio exit the victims' residence after the shootings but did not see Custodio carrying a baseball bat or a weapon at that time. The district court found, and the state conceded, that the evidence contained in the second witness's affidavit and presented through his testimony at the evidentiary hearing was sufficient to meet three of the four requirements of *Drapeau*. Nevertheless, the district court ruled that the evidence presented by the second witness would not probably produce an acquittal.

 Because the state concedes three of the four *Drapeau* factors, we limit our inquiry to the question of whether the district court erred in determining that the second witness's evidence would not probably have

produced an acquittal. The district court concluded that the evidence presented by the second witness would not probably produce an acquittal for the following reasons: (1) the second witness's testimony was inconsistent with evidence presented at trial, including evidence that the bat was found in Custodio's car and not at the victims' residence; (2) the witness's testimony placed his ability to accurately perceive and recall events in question; (3) the witness's repeated failure to mention these facts in prior interviews with law enforcement officers; and (4) the potential for impeaching the witness's testimony given his open hostility towards the victims.

A review of the transcript of the evidentiary hearing shows that the second witness testified that he was visually focused on the victims and gave Custodio only a passing glance. When asked if he had taken a good luck at Custodio, the witness answered, "It depends on how—no. I looked at him, yes. In a way, yes; in a way, no." These statements considerably reduced the potential evidentiary value of the witness's testimony. In contrast to the testimony of the second witness, all of the eye witnesses to the shootings testified that Custodio had entered the house with a baseball bat. Furthermore, the witness repeatedly expressed his hostility towards the victims throughout his testimony at the evidentiary hearing, thus creating a strong inference of bias. The witness also admitted during the evidentiary hearing that he had learned a great deal about this case from newspaper articles. At one point during his testimony, the witness stated that his recollections regarding the baseball bat were triggered by an article describing Custodio as carrying a pistol in one hand and a bat in the other.

We conclude that Custodio has failed to show that the district erred in determining that the newly discovered evidence presented by Custodio would not probably have produced an acquittal. Thus, we hold that the district court did not abuse its discretion in denying Custodio's motion for a new trial.

**E. Illegal Sentence**

 Custodio argues that the district court imposed an illegal sentence by enhancing his convictions of voluntary manslaughter, involuntary manslaughter, and aggravated battery for use of a deadly weapon in the commission of the crimes. Custodio asserts that Idaho law precludes enhancement of more than one of these convictions, as all three convictions arose out of one indivisible course of conduct. The determination of whether multiple convictions "arose out of the same indivisible course of conduct" is a factual question which requires us to review the record. *State v. Johns*, 112 Idaho 873, 882, 736 P.2d 1327, 1336 (1987).

Idaho Code Section 19–2520 provides that the maximum sentence authorized by statute for a conviction of one of the enumerated crimes, including aggravated battery and manslaughter, shall be increased by fifteen years if the person convicted of the crime "displayed, used, threatened, or attempted to use a firearm or other deadly weapon while committing or attempting to commit the crime." However, I.C. § 19–2520 was limited in scope by the later enactment of I.C. § 19–2520E. Idaho Code Section 19–2520E provides: "Notwithstanding the enhanced penalty provisions in sections 19–2520 ... any person convicted of two (2) or more substantive crimes provided for in the above code sections, which crimes arose out of the same indivisible course of conduct, may only be subject to one (1) enhanced penalty."

On appeal, Custodio concedes that the crimes for which he was convicted-voluntary manslaughter, involuntary manslaughter, and aggravated battery-are all crimes for which a sentence shall be enhanced for the use of a firearm or deadly weapon. Custodio also concedes that a handgun qualifies as a firearm for purposes of I.C. § 19–2520. However, Custodio asserts that all three of the convictions arose out of the same "indivisible course of conduct." Therefore, Custodio argues that I.C. § 19–2520E precluded the district court from enhancing more than one of the sentences.

The district court determined that each of the three convictions related to a "distinct criminal act involving a different victim." Thus, the district court concluded that the three convictions did not arise from the same indivisible course of conduct and imposed an enhancement for use of a deadly weapon on all three convictions.

Custodio argues that contrary to the district court's analysis, the proper inquiry is not the number of crimes involved but whether those crimes arose out of the same indivisible course of conduct. The Idaho Supreme Court has addressed the scope of I.C. § 19–2520E in two previous cases. In *State v. Searcy*, 118 Idaho 632, 798 P.2d 914 (1990), the defendant hid in the back room of a store where he waited to either steal or rob as the situation dictated. Upon his discovery by the store owner, a confrontation ensued and the defendant shot the store owner in the stomach. The defendant then told the store owner that if she opened the safe he would call an ambulance. The store owner opened the safe and the defendant removed the money. The defendant then shot and killed the store owner. The defendant was convicted of robbery and murder, and the district court enhanced both sentences for use of a deadly weapon I.C. § 19–2520. However, pursuant to an I.C.R. 35 motion to correct an illegal sentence, the district court removed one of the enhancements after it determined that imposing both enhancements would violate the limitation contained in I.C. § 19–2520E. The Idaho Supreme Court stated that the district court's determination that the original sentence imposed on the defendant was invalid was correct because it contained two separate enhancements in violation of I.C. § 19–2520E. *Searcy*, 118 Idaho at 638, 798 P.2d at 920.

The Idaho Supreme Court addressed the limitation contained in I.C. § 19–2520E at greater length in *Johns*, 112 Idaho 873, 736 P.2d 1327. In *Johns*, the defendant mortally shot and stabbed the victim, dragged the victim's body off to a hiding place, and then returned to town. After returning to town, the defendant entered the victim's apartment and took several of his personal belongings. The defendant was convicted of robbery and murder, and the district court enhanced both sentences for use of a deadly weapon pursuant to I.C. § 19–2520. The defendant appealed, claiming that both sentences arose out of the same indivisible course of conduct. After reviewing the record, the Idaho Supreme Court held that the district court did not violate the provisions of I.C. § 19–2520E by imposing a separate enhancement on each sentence. *Johns*, 112 Idaho at 882, 736 P.2d at 1336.

The facts in the instant case more closely parallel those found in *Searcy*. All of the shots fired by Custodio occurred during a relatively brief interval of time. Although this alone may be insufficient to show that the three crimes arose out of the same indivisible course of conduct, there are other factors which support this conclusion. First, the record contains no indication that Custodio's underlying motivation was different with respect to each individual victim or crime. Furthermore, although the shots fired by Custodio struck three separate victims, and required at least three separate acts on the part of Custodio (pulling the trigger three times), they were all fired amidst a struggle between Custodio and the victims for possession of the baseball bat. As stated by Justice Huntley in his dissent in *Johns*, "to assume that the existence of the requisite elements for two crimes mandates the conclusion that the two crimes were *not* committed during the same course of conduct would preclude *ever* finding that two separate crimes arose out of the same indivisible series of events." *Johns*, 112 Idaho at 883, 736 P.2d at 1337. Furthermore, we note that the words "separate acts" and "separate victims" were conspicuously left out of the language of I.C. § 19–2520E by the legislature. Thus, we conclude that the phrase "same indivisible course of conduct" was meant to encompass more than a single "act."

We conclude that Custodio's convictions for voluntary manslaughter, involuntary manslaughter, and aggravated battery all arose out of the same indivisible course of conduct. Accordingly, we hold that the district court erred in enhancing Custodio's sentences pursuant to I.C. § 19–2520 for involuntary manslaughter and aggravated battery. Therefore, Custodio's judgments of conviction for involuntary manslaughter and aggravated battery must be vacated and remanded for resentencing by the district court.

## F. Sentence Review

Custodio was sentenced to an aggregate unified term of thirty years, with a minimum

period of confinement of fifteen years. Custodio argues that his aggregate sentence is excessive in light of his lack of a prior felony record, his potential for rehabilitation, the role that alcohol played in his crimes, and his assertion that the victims were the first aggressors.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982). When reviewing a sentence imposed under the Unified Sentencing Act, we treat the minimum period specified by the sentencing judge as the probable period of confinement. *State v. Hodge*, 124 Idaho 927, 929, 866 P.2d 184, 186 (Ct.App.1993).

Custodio's judgments of conviction stem from a violent incident which demonstrates Custodio's disregard for the sanctity of human life. After being asked to leave the victims' residence, Custodio returned with a baseball bat and became involved in an altercation with the victims. Custodio then pulled a gun from his waistband and fired multiple shots, killing two men and wounding a third individual. A review of the presentence investigation report (PSI) reveals that Custodio has a prior felony conviction for burglary, as well as misdemeanor convictions for reckless driving, possession of marijuana, and

unauthorized entry. Furthermore, Custodio showed no remorse for the taking of two lives, claiming that he acted in self-defense. We note, however, that the jury verdicts in this case do not support Custodio's claim.

The district court fashioned Custodio's sentence taking into account the four sentencing objectives of protection of society, rehabilitation, deterrence, and punishment. The district court was aware of Custodio's prior criminal record, his potential for rehabilitation, the role that alcohol played in the crimes, and the evidence concerning the circumstances surrounding the crimes at the time that Custodio's sentences were imposed. In addition, the district court specifically noted Custodio's practice of regularly carrying a firearm, his conduct while in jail, his lack of remorse concerning the crimes, and that this was not Custodio's first felony conviction involving the use of a firearm. After considering the nature of the crimes and the mitigating factors discussed above, the district court determined that a lengthy period of incarceration was necessary in this case to adequately protect society.

Having reviewed the record in this case, we cannot say that the district court abused its discretion. Therefore, Custodio's sentence of an aggregate unified term of thirty years, with a minimum period of confinement of fifteen years, is not unreasonable or excessive.

### III.

### CONCLUSION

Custodio has failed to show that the district court erred in denying his motion to suppress, in denying his motion for change of venue, in excluding the challenged evidence, or in denying his motion for a new trial. However, we conclude that the district court erred in imposing sentence enhancements for use of a deadly weapon in Custodio's judgments of conviction for involuntary manslaughter and aggravated battery, which are vacated and remanded for proceedings consistent with this opinion. Custodio's judg-

ments of conviction and sentences for burglary and voluntary manslaughter are affirmed.

Judge LANSING and Judge Pro Tem HART, concur.