## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 50253

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 21, 2024** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| MARSHALL DEE HENDRICKS, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Dane H. Watkins, Jr., District Judge.

Judgment of conviction, affirmed.

Browning Law; Allen H. Browning, Idaho Falls, for appellant. Allen Browning argued.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

---

GRATTON, Chief Judge

Marshall Dee Hendricks appeals from his judgment of conviction. For the following reasons, we affirm.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

Hendricks shot and killed Rory Neddo. The underlying facts of the encounter were disputed at trial. Neddo discovered a picture of Hendricks with Jessica Nilson, a woman with whom Neddo had a prior relationship and a child. Neddo became angry and called Hendricks. Hendricks invited Neddo to fight at the residence where he was staying. Jason Wessells, Neddo's brother, then drove Neddo to Hendricks. When Neddo arrived, he approached Hendricks while Hendricks was holding a firearm. Words were exchanged. Forensic evidence revealed a gun was fired into Neddo's face from a distance of approximately one foot. Hendricks pled guilty to

1

voluntary manslaughter with a deadly weapon enhancement pursuant to a plea agreement. Later Hendricks withdrew his guilty plea and instead pled guilty to unlawful possession of a firearm, Idaho Code § 18-3316(1). Hendricks proceeded to trial on charges of second degree murder, I.C. § 18-4001; aggravated assault, I.C. § 18-905(1); and a deadly weapons enhancement, I.C. § 19-2520.

At trial, Hendricks argued he shot Neddo in self-defense. Hendricks claimed he refrained from shooting Neddo until Neddo threatened him; Neddo was reaching behind his back with one hand and toward the gun Hendricks held with his other hand. Hendricks sought to admit evidence of Neddo's prior bad acts, violent character, and threatening statements. Hendricks also sought to introduce expert testimony regarding Neddo's drug use and consequent violent behavior. The district court excluded the expert testimony, specific violent acts evidence, and threatening statements testimony. The jury found Hendricks guilty of second degree murder, not guilty of aggravated assault, and the enhancement was dismissed. The district court imposed concurrent sentences of thirty-six years with eleven years determinate for second degree murder and five years determinate for unlawful possession of a firearm. Hendricks appeals.

## II.

## STANDARD OF REVIEW

The trial court has broad discretion in the admission and exclusion of evidence and its decision to admit evidence will be reversed only where there has been a clear abuse of that discretion. *State v. Folk*, 162 Idaho 620, 625, 402 P.3d 1073, 1078 (2017). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Hendricks argues the district court erred by excluding the expert testimony, specific violent acts evidence, and threatening statements testimony. Hendricks generally claims the excluded evidence would have established why his conduct was justified as self-defense. In addition, Hendricks asserts that the evidence at trial was insufficient to convict. The State argues the district

court did not abuse its discretion by excluding the expert testimony and prior violent acts evidence. The State acknowledges that the district court erred by excluding the threatening statements testimony, but argues the error was harmless because it did not contribute to the verdict. Finally, the State asserts that sufficient evidence supports the jury verdict.

## A.    Expert Testimony

Hendricks argues the exclusion of his expert's testimony violated his constitutional right to present a defense and due process. Hendricks claims the district court should have imposed a lesser discovery sanction such as a continuance instead of exclusion. The State argues Hendricks failed to preserve his argument that the district court erred by not choosing a lesser sanction and fails to provide relevant authority on appeal. Alternatively, the State asserts Hendricks failed to establish how the district court abused its discretion by excluding untimely, facially inadequate, and undisclosed testimony.

This Court reviews a district court's refusal to allow a defense witness to testify due to a discovery violation under an abuse of discretion standard. *State v. Miller*, 133 Idaho 454, 456, 988 P.2d 680, 682 (1999). In determining whether to exclude a witness, the court must balance the prejudice to the State due to the lateness of disclosure against the defendant's right to a fair trial. *State v. Martinez*, 137 Idaho 804, 807, 53 P.3d 1223, 1226 (Ct. App. 2002). It is an abuse of discretion to exclude defense evidence as a discovery sanction if the State did not show how it had been prejudiced. *Miller*, 133 Idaho at 457, 988 P.2d at 683. Where a defendant claims that his or her right to due process was violated, we defer to the trial court's findings of fact, if supported by substantial evidence. *State v. Smith*, 135 Idaho 712, 720, 23 P.3d 786, 794 (Ct. App. 2001).

However, we freely review the application of constitutional principles to those facts found. *Id.* Hendricks argues the expert was timely disclosed a week before trial, he disclosed the area in which Dr. Dodson would testify, and he provided Dr. Dodson's curriculum vitae and referred to the autopsy report. The State's pretrial request for discovery included a request for a summary or report of any expert testimony that Hendricks intended to introduce pursuant to Idaho Rules of Evidence 702, 703, or 705. The district court had ordered that discovery was to be completed by May 9, 2022. On May 27, ten days before the start of trial, Hendricks disclosed his intent to call Dr. Robin Dodson as an expert witness. Clearly, the disclosure was untimely pursuant to the district court's order despite Hendricks' claims on appeal.

3

More importantly, Hendricks did not provide a summary of the expert witness's opinions or the underlying data for the opinions. Hendricks was required under Idaho Criminal Rule 16(c)(4) to provide a written summary of his proposed expert's opinions, the underlying facts and data relied on, and the expert's qualifications. Hendricks provided Dr. Dodson's curriculum vitae, but the disclosure merely stated Dr. Dodson was an expert in pharmacology and would address the drug findings in the State's toxicology report.[1] Hendricks sought the expert's testimony to refute the State's evidence regarding Neddo's violent disposition following drug use. Hendricks claimed that the expert would testify that, given the high levels of drugs in Neddo's system, he would have been extremely aggressive and violent. He failed to provide data upon which the expert could have come to that conclusion.

After the State objected, Hendricks represented that he could contact the expert that afternoon, which was on the fourth day of trial. The district court concluded that the disclosure was untimely and substantively insufficient under the rules. *See* I.C.R. 16(c)(4). The district court further concluded that the proffer of providing a report or summary that afternoon during trial was too late and insufficient for preparation for cross-examination. We agree.

Hendricks claims that he was prejudiced in not being able to call the expert witness and the State did not show prejudice. Hendricks claims without the expert he could not refute the State's expert witness, who he contends was undisclosed, but points to no objection to the State's expert witness in the district court. The district court considered the testimony in the record in weighing the prejudice to the parties. The district court noted that there was already testimony presented that the methamphetamine and marijuana metabolites found in Neddo's body reflected that he was under the influence which would affect his behavior, including the likelihood of violent behavior. Other evidence established Neddo's violent tendencies as well. Thus, the prejudice to Hendricks was not so great as to excuse the discovery disclosure violation.

Hendricks asserts the district court should have considered less severe remedies such as a short continuance, a mistrial, or other sanctions[2] before excluding a defense witness. The State argues the late disclosure of the expert, the failure to provide a report or statement of what the

---

[1]    Hendricks claimed that he had sent the prosecutor an email explaining the expert would testify to the level of drugs in Neddo's system and how that affected his paranoia and violent behavior. The State flatly denied receipt of any such email. There is no evidence of the purported email in the record.

[2]    Hendricks did not argue for these lesser sanctions in the district court.

witness would testify to, and the belated proffer of disclosing the expert opinions on the afternoon of the fourth day of trial was prejudicial as the State would not be able to effectively prepare cross-examination or know of the need to identify and call a rebuttal expert. The district court acted well within its discretion in agreeing with the State. Hendricks has not shown that the district court erred in excluding his expert witness.

## B. Specific Incidents Excluded

Hendricks argues the district court erred by excluding evidence of Neddo's violent character trait. Hendricks claims the excluded specific acts of violence by Neddo should have been admitted as an essential element of his claim of self-defense. The State argues the excluded evidence was inadmissible under the Idaho Rules of Evidence. The specific act evidence included that Neddo beat Jessica on the day of his death because she had been with Hendricks and that Neddo previously had an armed standoff with police that Hendricks learned about when the two had earlier exchanged stories in jail.

Idaho Rule of Evidence 404(a)(2)(B) permits a defendant in a criminal case to offer evidence of a victim's pertinent character trait. Evidence of a crime or wrong is not admissible to prove propensity but may be admissible to prove another purpose such as motive or intent. I.R.E. 404(b). Evidence of a person's character or character trait is proven through reputation or opinion testimony. I.R.E. 405(a). Proof of a homicide victim's character for violence in the form of specific instances of conduct is admissible only if the character trait for violence is an essential element of a charge, claim, or defense. I.R.E. 405(b). In *State v. Custodio*, 136 Idaho 197, 30 P.3d 975 (Ct. App. 2001) this Court held:

> Proof of a victim's propensity for violence, standing alone, does not prove an element of a claim of self-defense. Proof of a victim's violent character does not show that the victim was the first aggressor in a particular conflict, nor does proof of a victim's passive demeanor foreclose the defendant from asserting a claim of self-defense.

*Id.* at 204, 30 P.3d at 982. Thus, in self-defense cases, I.R.E. 405 limits evidence of a victim's propensity for violence to opinion and reputation testimony because the victim's propensity for violence is not an essential element of the claim. *Custodio*, 136 Idaho at 204, 30 P.3d at 982; s*ee also State v. Godwin*, 164 Idaho 903, 919, 436 P.3d 1252, 1268 (2019) (affirming *Custodio* and Idaho's long-standing precedent holding that a victim's character for violence or aggression is not an essential element of a self-defense claim as required for the admission of specific-act evidence under I.R.E. 405).

Hendricks asserts he should have been permitted to present specific instances of violence and drug use as a pertinent character trait and that I.R.E. 404(b)(2) allows evidence of wrongs or other acts. Hendricks argues evidence of Neddo's specific acts of violence was permissible because the State opened the door. Hendricks also claims Neddo's specific prior instance of violence on the day of the encounter, namely that he beat Jessica, constituted a "continuous methamphetamine-fueled rage" of drug-induced violence, not a prior bad act. The State argues I.R.E. 405(b) limits the admission of the evidence, the evidence is not admissible because of other evidence elicited by the State, and Neddo's prior violence on the day in question, do not constitute a continuous course of conduct for which the evidentiary rules do not apply. Finally, the State argues that Hendricks did not challenge the district court's Rule 405(b) ruling, which is fatal to his claims.[3]

As set forth above, proof of a homicide victim's character for violence in the form of specific instances of conduct is inadmissible to prove self-defense under I.R.E. 405(b). Hendricks did not challenge the district court's ruling in that regard. Hendricks cites no pertinent authority relative to his claims that the specific act evidence becomes admissible once evidence is presented by the State, thus "opening the door," or that his prior violence against Jessica is admissible under I.R.E. 404(b), despite the limits of I.R.E. 405(b) because it was not a prior bad act, but a continuous methamphetamine-fueled rage. The district court properly excluded evidence of specific acts.

## C.    Neddo's Threatening Statements

Hendricks argues the district court erred by excluding Neddo's threatening statements made to Jessica and Jason regarding Hendricks, including that Neddo would teach him a lesson and put him in the ground, he would "beat the brakes off" Hendricks, and that his face "would not be pretty anymore." Hendricks argues that, even though the statements were not communicated to him, they show Neddo's motive and state of mind. Hendricks argues the district court incorrectly applied the hearsay excited utterances and then existing state of mind exceptions. The State concedes the statements were admissible to show Neddo's intent and who was the first aggressor, however, any error was harmless. We thus analyze this issue only in the context of harmless error.

---

[3]    Hendricks attempts to address I.R.E. 405(b) in his reply brief. This Court will not consider arguments raised for the first time in the appellant's reply brief. *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005).

A defendant is entitled to a fair trial, but not a perfect trial. *State v. Enno*, 119 Idaho 392, 408, 807 P.2d 610, 626 (1991); *State v. Estes*, 111 Idaho 423, 428, 725 P.2d 128, 133 (1986). Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

Turning to the probative force or prejudicial effect of the error, Hendricks asserts that the statements demonstrate Neddo's state of mind, namely that he was in a rage which lasted for a few hours and that he intended to attack Hendricks. Ultimately, Hendricks claims that the statements are probative of his claim that Neddo was the aggressor in the incident, and he acted in self-defense. As noted, the State concedes that, under the rules, the statements were admissible for that purpose. However, as the State argues, there was an abundance of evidence in the record regarding Neddo's violent propensities and his anger at Hendricks irrespective of the excluded statements. Jessica testified to Neddo's reputation for violence when high and that he smoked methamphetamine before he confronted Hendricks. In fact, Jason testified to the statements Neddo made on the drive to the encounter, including, "I'm going to feel bad when I beat the brakes off this kid. He invites me to come over to fight. And I'm going to feel bad. I already beat him up in jail." Hendricks testified that during the phone call Neddo told him he was "going to smash [him] out," would "blow[] [his] kneecaps out," and make him watch Neddo "cut Jessica's throat." Hendricks testified that Neddo ran toward him, chest bumped him, and then swung an arm at him. Hendricks testified that Neddo made additional threatening statements as the encounter unfolded,

7

including "You're about to get jacked up." Given the admitted evidence of Neddo's violent propensities, the threatening statements made to Jason and the direct threats to Hendricks, the probative value of the excluded evidence was minimal.

On the other hand, the probative force of the record as a whole supporting Hendricks' guilt beyond a reasonable doubt is substantial. The evidence showed that during the call both men were angry, and Hendricks invited Neddo to fight. Hendricks refused to accept Neddo's attempts to return Hendricks' call. Then, Hendricks armed himself and said that "he was going to have to shoot [Neddo]." Both sides presented evidence of the encounter and its escalation, culminating in Hendricks shooting Neddo in the face from a foot away. Thus, weighing the probative force of the record as a whole and at the same time comparing it against the probative force of the error, the error in excluding the evidence was harmless. The error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error.

## D.      Unsupported Verdict

Hendricks argues the verdict is not supported by the evidence. Hendricks contends that Neddo arrived under the influence of methamphetamine, armed, and angry; therefore, Hendricks reasonably believed his actions in self-defense were justified. Hendricks claims such evidence does not support a finding of second degree murder because Idaho Criminal Jury Instruction 705(4) required he acted without justification or excuse and ICJI 705(5) required malice aforethought. The State argues Hendricks failed to present this argument with adequate legal authority or citations and failed to address the sufficiency of the evidence standard of review. The State points out that Hendricks only provided one citation to the transcript and one citation to the ICJIs. Hendricks fails to support this argument with relevant authority and citation to the record. A party waives an issue on appeal if either authority or argument is lacking. *Zichko*, 129 Idaho at 263, 923 P.2d at 970. Nonetheless, Hendricks' argument simply reasserts his claim of self-defense, which the jury rejected. The verdict is amply supported by evidence of Hendricks' guilt beyond a reasonable doubt.

## E.      Sentencing Error

Hendricks claims he should be resentenced on the felon in possession of a firearm charge. Hendricks asserts if this Court vacates the verdict, then his sentence on the possession of firearm charge should be reconsidered. Hendricks claims that the sentence on the possession charge took

into consideration the guilty verdict. Because we do not overturn the jury's verdict, we need not address this argument.

## IV.
## CONCLUSION

The district court did not err by excluding Hendricks' expert witness testimony or evidence of specific instances of violence by the victim. The district court did err by excluding threatening statements by the victim; however, that error was harmless. Finally, the verdict is supported by the evidence. Accordingly, the district court's judgment of conviction is affirmed.

Judge HUSKEY and Judge TRIBE **CONCUR**.