26 P.3d 31

STATE of Idaho, Plaintiff–Respondent,

v.

Lisa Marie VARIE, Defendant–Appellant.

No. 25207.

Supreme Court of Idaho,
Caldwell, March 2001 Term.

May 30, 2001.

**850**

State Appellate Public Defender, Boise, attorneys for appellant. Sara B. Thomas argued.

Alan G. Lance, Attorney General, Boise, attorneys for respondent. Michael A. Henderson argued.

SCHROEDER, Justice.

Lisa Marie Varie (Varie) was convicted of second-degree murder following a jury trial. She appeals from: (1) the denial of her motion to suppress evidence obtained during a search of her home and statements made during police interviews; (2) the prohibition of testimony relating to a diagnosis of battered spouse syndrome; (3) the denial of a proposed jury instruction regarding the diagnosis of battered spouse syndrome; and (4) the sentence imposed. The decisions of the district court are affirmed.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Dennis and Lisa Marie Varie were married in September of 1988. Dennis Varie (Dennis) was reported missing on October 17, 1997, by his brother. On October 18, 1997, an Ada County deputy sheriff went to the Varie home in response to that missing persons report. He asked Varie if he could talk to her and if he could search the house and barn for any clues regarding Dennis' disappearance. Varie agreed. The deputy retrieved a "Consent to Search" form from his car and was met by a second deputy who had arrived. When the deputy handed Varie the form, she said, "I don't have my attorney with me. I don't know if I should let you search the house." The deputy told Varie that she could permit or deny the search. She agreed to the search and signed the "Consent to Search" form. The deputies found nothing and left. Varie made no statements to the deputies and was not placed in custody.

Law enforcement officers were suspicious about the circumstances of Dennis' disappearance and suspected Varie might be involved. On October 21, 1997, Detective Corby Christensen (Christensen) of the Ada County Sheriff's Department called Varie and told her that some officers would come to her home with a bloodhound to perform further investigation. Varie verbally agreed to the search. Christensen, Ada County Detective Jamie Barker and Officer Tony Plott of the Boise Police Department, arrived at Varie's home around noon. The police dog remained in one of the vehicles. The officers spoke to Varie who then invited them into the house. They asked for permission to search the property and gave Varie another "Consent to Search" form which she signed. She made no reference to an attorney on this occasion. Christensen spoke with Varie and asked her to stay with him in the living room, out of a room where guns were kept. The other officers found the body of Dennis Varie in the crawlspace located in the bedroom closet. Christensen advised Varie that the circumstances had changed, and they needed to talk to her about the situation. Ada County Detective Ken Smith (Smith) had arrived on the scene and asked Varie to come to the Sheriff's station. Varie was not handcuffed, searched or placed under arrest, although Christensen testified that had Varie not agreed to go with them to the police station that she would have been placed under ar-

rest. Varie was allowed to call a neighbor to take care of her dogs before leaving.

Christensen and Smith conducted the interview at the Ada County Law Enforcement Building. Christensen advised Varie that she was not under arrest and advised her of her *Miranda* rights. After Varie was advised of her rights, she was given a written waiver form which she subsequently signed. In the course of the interview Varie said, "I don't have a lawyer. I can call someone ..." Christensen asked, "[D]o you want a lawyer before you talk to us, is that what you are saying?" Varie replied, "[A]m I supposed to have a lawyer?" Christensen then told her something to the effect that it was her preference, that he did not know if it would make much difference, but that this was her opportunity to move ahead and tell them what happened. Varie began to speak. Smith interrupted and clarified, "[I] guess is it your choice to go ahead and talk with us now without a lawyer?" Varie replied, "[T]hat's fine." Varie told the detectives that she shot her husband after he attempted to rape her. Varie was clearly upset throughout the interview, though composed in answering many of the officer's questions.

After Varie finished her initial version of events, the detectives left the room. When they returned, some twenty minutes later, they continued questioning. After the detectives were finished, Varie was formally arrested.

Christensen and Smith conducted a second interview on the same day at approximately 11:00 p.m. Varie told them she was not feeling well. Smith advised Varie of her *Miranda* rights, then asked, "[D]o you want to go ahead and talk to us now?" Varie replied, "[W]ell, will I get a lawyer tomorrow?" Smith told her she would get a lawyer the next day at her arraignment.

On October 22, 1997, Varie was scheduled for a polygraph test. At that point, she asked to have an attorney. No further questioning occurred.

The state charged Varie with first-degree murder. She filed a motion to suppress all evidence obtained from the interrogations, searches and seizures, occurring both at her home and at the Ada County Sheriff's office. The district court denied the motion following several days of hearing.

The state filed a motion in limine to prevent Varie's psychologist, Dr. Glenda Loomis, from testifying in regard to battered spouse syndrome. The state also moved to allow the state's expert to examine Varie. Following the presentation of evidence, the district court ruled that Dr. Loomis' testimony would be limited to general characteristics and general technical and professional expertise regarding domestic violence and post traumatic stress disorder.

Following trial, the jury found Varie guilty of second-degree murder with the use of a deadly weapon. The district court sentenced Varie to a unified term of thirty-five years with seven years fixed. Varie appealed.

## II.

## THE DISTRICT COURT DID NOT ERR IN DENYING VARIE'S MOTION TO SUPPRESS.

Varie addresses two issues encompassed in the motion to suppress. The first has to do with the search of her home, the second with her interviews at the police station.

### A. Standard Of Review

In reviewing an order granting or denying a motion to suppress evidence this Court defers to the trial court's factual findings unless they are clearly erroneous. *State v. Bentley*, 132 Idaho 497, 499, 975 P.2d 785, 787 (1999), *citing State v. Webb*, 130 Idaho 462, 465, 943 P.2d 52, 55 (1997); *State v. McCaughey*, 127 Idaho 669, 671, 904 P.2d 939, 941 (1995). This Court "exercises free review over the trial court's determination as to whether constitutional requirements have been satisfied in light of facts found." *Id.* In addition, a trial court's conclusion that a defendant made a knowing and voluntary waiver of his or her *Miranda* rights will not be disturbed on appeal unless it can be shown that such a conclusion is not supported by substantial and competent evidence. *State v. Luke*, 134 Idaho 294, 297, 1 P.3d 795, 798 (2000), *citing State v. Mitchell*, 104 Idaho 493, 498, 660 P.2d 1336, 1341 (1983), *cert.*

*denied,* 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983).

## B. The Search Of Varie's Home Was Pursuant To A Valid Consent.

■ Varie only challenges the search of her home on October 21, 1997, when the police found the body. The police did not have a warrant to search Varie's home at that time, but they obtained Varie's consent to search the home. Varie maintains that her consent was the result of implied duress and coercion, pointing to the United States Supreme Court's statement in *Schneckloth* that "in examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." *Schneckloth v. Bustamonte,* 412 U.S. 218, 229, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

■ A warrantless search conducted pursuant to valid consent is constitutional if consent is freely and voluntarily given. *Id.* at 222, 93 S.Ct. 2041. "Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority is a question of fact to be determined in light of all the circumstances." *Id.* at 221, 93 S.Ct. 2041.

■ The district court's determination that Varie's consent was freely and voluntarily given is supported by the evidence and is not clearly erroneous. Prior to the October 21, 1997, search, Christensen telephoned Varie to see if it was alright to come out with a bloodhound, and to arrange a convenient time. Varie's rights were explained to her regarding the "Consent to Search" form. She never made an objection to the search. The officers testified that they approached and spoke to Varie in a low-key manner. Even if the police officers searched the home because she was a suspect in Dennis' disappearance, this fact does not overcome the substantial and competent evidence cited by the district court to support the finding that Varie freely and voluntarily consented to the officers' search. *See Doe v. State,* 131 Idaho 851, 855, 965 P.2d 816, 820 (1998). As the United States Supreme Court noted in *Schneckloth:* "In situations where the police have some evidence of illicit activity, but lack probable cause to arrest or search, a search authorized by a valid consent may be the only means of obtaining important and reliable evidence." *Schneckloth,* 412 U.S. at 227, 93 S.Ct. 2041. Account must be taken of "subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." *Id.* at 218, 93 S.Ct. 2041. However, there is no evidence that the police behavior during the search was overtly or subtly coercive.

The district court's holding that the search of Varie's property was conducted pursuant to valid and voluntary consent is supported by the evidence.

## C. Varie Made Knowing, Voluntary And Intelligent Waivers of Her *Miranda* Rights During The Interview At The Police Station.

■ "The State, in attempting to introduce statements made by a suspect during custodial interrogation and outside the presence of an attorney, must establish a voluntary, knowing and intelligent waiver of suspect's rights." *Mitchell,* 104 Idaho at 497, 660 P.2d at 1340. The state argues that Varie was not in custody for purposes of *Miranda* as determined by the district court. Regardless, there is no dispute that she signed two separate forms during two separate interviews waiving her *Miranda* rights. "An express written statement waiving *Miranda* rights, is strong, but not conclusive, proof of voluntary waiver." *Luke,* 134 Idaho at 297, 1 P.3d at 798. As noted by this Court in *State v. Radford,* 134 Idaho 187, 998 P.2d 80 (2000), "[I]n order to determine the voluntariness of a confession, the Court must look to the 'totality of the circumstances' and determine whether the defendant's will was overborne." *Id.* at 191, 998 P.2d at 84, *citing Arizona v. Fulminante,* 499 U.S. 279, 287, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

At the commencement of the first interview, Christensen told Varie she was not under arrest and read her the *Miranda* rights. He represented the interview as

Varie's opportunity to talk to them. Varie said she did not have a lawyer. She said she could call someone. Then Varie asked if she was supposed to have a lawyer. Christensen told her it was her choice, but that it probably would not make a difference. She responded by saying, "[Y]eah, can't really do anything." Christensen went on to tell Varie that it was important for him to confirm the information in his report. She began to speak. However, Smith intervened and confirmed with Varie that it was her choice to go ahead and talk to them without having an attorney present. She said, "[T]hat's fine."

The district court found that Varie exhibited at least average intelligence and appeared quite cognizant of what was taking place. She appeared upset and may have been vulnerable at the time of questioning, but there is evidence that she did understand what was being said to her and that she was not forced to sign the waivers or continue to speak to the officers. Although she inquired about an attorney, such an inquiry does not equate to a clear and unequivocal request for counsel. *Cf. Davis v. United States*, 512 U.S. 452, 462, 114 S.Ct. 2350 (1994) (a suspect in a murder case during a custodial interrogation stated "maybe I should talk to a lawyer" and the Court held this did not constitute an assertion of the right to counsel and that interrogation could proceed).

In this case the Court has the benefit of a video of the interview. This is important because the transcript of that interview is incomplete and at times inaccurate, giving little flavor of what happened. There is no doubt that Christensen delivered the advice of rights in a very soothing fashion and emphasized that what was really important was Varie telling her own story and moving on. Clearly there was an effort to de-emphasize the importance of the Constitutional rights and stress Varie's opportunity to tell her story and allow the officer to complete his report. Nevertheless, she was advised of her rights and appeared to understand them. Significantly, Smith broke the subtly persuasive atmosphere of the moment and asked very directly if Varie wished to proceed. She agreed to proceed. The evidence before

this Court through the video of the interview supports the findings of the district court.

■ As to the second interview, Varie was again advised of her rights, understood those rights and did not make a clear, unequivocal request for counsel prior to proceeding.

## III.

## THE DISTRICT COURT DID NOT ERR IN PROHIBITING EXPERT TESTIMONY ON THE DIAGNOSIS OF BATTERED SPOUSE SYNDROME.

### A. Standard Of Review

■ The decision to allow or exclude expert testimony is within the discretion of the trial court and will not be set aside absent a showing of abuse of discretion. *State v. Faught*, 127 Idaho 873, 875, 908 P.2d 566, 568, *citing State v. Crea*, 119 Idaho 352, 353, 806 P.2d 445, 446 (1991). In reviewing the trial court's exercise of discretion, this Court must determine whether the trial court: (1) correctly perceived the issue as one involving the exercise of discretion; (2) acted within the outer boundaries of its discretion and consistently with any legal standards applicable to specific choices it had; and (3) reached its decision by an exercise of reason. *State v. Powell*, 125 Idaho 889, 891, 876 P.2d 587, 589 (1994), *citing State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

I.R.E. 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■ Expert testimony is generally admissible if evidence is beyond the common experience of most jurors and the jurors would be assisted by such testimony. *State v. Hester*, 114 Idaho 688, 694, 760 P.2d 27, 33 (1988). "Where the normal experience and qualification of lay jurors permit them to draw proper conclusions from given facts and circumstances, expert conclusions or opinions

are inadmissible." *Hester,* 114 Idaho at 696, 760 P.2d at 35, *citing State v. Lash,* 237 Kan. 384, 699 P.2d 49, 51 (1985).

## B. The Opinion Concerning Battered Spouse Syndrome

■ Varie sought to introduce evidence of battered spouse syndrome and the expert opinion that she was a battered spouse. The district court limited the expert testimony to the characteristics of domestic violence and the reaction of victims to such violence. In a. hearing prior to trial the district court allowed the defense expert, Dr. Loomis, to testify at length about the diagnosis of battered spouse syndrome, as well as to her diagnosis of Varie as suffering from that syndrome. At trial, the district court allowed the defense to put on numerous witnesses to establish that Varie was a continual victim of abuse and allowed the defense to make an offer of proof as to the diagnosis of battered spouse syndrome prior to Dr. Loomis' testimony. The district court then limited the testimony of Dr. Loomis to those areas that would be of assistance to the jury. It is clear that the district court correctly perceived the issue of whether to allow expert testimony as one involving the exercise of discretion.

The district court acted within the outer boundaries of its discretion, consistent with the applicable legal standards. *See Powell,* 125 Idaho at 891, 876 P.2d at 589. The crux of the district court's position in not allowing testimony specifically focused on the diagnosis of battered spouse syndrome was the effect such testimony would have, that is, would it assist the jury in determining that Varie acted in self defense, or in the alternative, that Varie did not have the requisite state of mind to commit first or second-degree murder?

■ It is a long-standing rule in Idaho that generally, in order for a defendant to prevail on a self-defense argument, a defendant must show that he or she acted as a reasonable and prudent person under the same or similar circumstances. *See State v. McGreevey,* 17 Idaho 453, 105 P. 1047 (1909). Similarly, in order for a defendant to avoid a first or second-degree murder conviction, the defendant must show that he or she did not have the requisite state of mind at the time of a homicide to warrant such a conviction. The issue in this case is not necessarily to determine if the diagnosis of battered spouse syndrome is valid or invalid, but whether or not testimony regarding battered spouse syndrome would assist the trier of fact in making determinations relevant to the questions of self-defense and state of mind.

The district court allowed Dr. Loomis to testify extensively on domestic violence, including but not limited to why victims stay in abusive relationships, how victims perceive themselves and their abuser, how victims of abuse might perceive cues of their abuser, and how victims feel and react during abusive situations. Dr. Loomis' testimony followed several witnesses who testified as to Varie's abuse. It was then left up to the jury to decide whether Varie acted as a reasonable person would in the same or similar circumstances. The district court found that neither testimony regarding the diagnosis of battered spouse syndrome, nor Dr. Loomis' specific diagnosis of Varie with that syndrome, was necessary in order for the jury to draw their conclusions. The district court found that precluding these opinions avoided a possibly confusing explanation of a syndrome that did not have a bearing on the decisions the jury had to make. *See Hester,* 114 Idaho at 694, 760 P.2d at 33. The district court held that situations such as those at issue in this case are matters of common experience, i.e., fear based on prior acts, and that such human experiences are not beyond the common experience of most jurors.

Similar to this case, in *State v. Griffiths,* 101 Idaho 163, 610 P.2d 522 (1980), the defendant shot and killed her husband during an argument. The defendant claimed the husband had abused her in the past. On the date of the shooting, the defendant claimed that the husband was attacking her in a similar fashion as in the past, and she feared for her life. The defense expert, a psychiatrist, was allowed to testify as to the effect of fear on abuse victims but not to offer an opinion as to the defendant's state of mind at the time of the shooting. This Court held there was no abuse of discretion and went on to state that "[F]ear is a common human emotion within the understanding of a jury

and hence expert psychiatric explanation is not necessary." *Griffiths,* 101 Idaho at 165, 610 P.2d at 524.

Jurors were assisted by expert testimony presented by Dr. Loomis about the effects of domestic violence on victims, as well as testimony by several other witnesses that Varie was in fact abused. The district court reasonably concluded that jurors could draw proper conclusions given the testimony presented. Although Dr. Loomis was not allowed to testify as to her diagnosis of Varie with battered spouse syndrome, the limitation was not an abuse of discretion by the district court.

## IV.

## THE DISTRICT COURT DID NOT ERR IN DENYING THE INCLUSION OF A REQUESTED JURY INSTRUCTION REGARDING BATTERED SPOUSE SYNDROME.

Varie argues that a requested jury instruction relating to battered spouse syndrome should have been given to the jury by the district court, because the instruction was supported by facts of the case, it was a correct statement of law and was not adequately covered by other instructions. *See State v. Eastman,* 122 Idaho 87, 89, 831 P.2d 555, 557 (1992). The district court denied the inclusion of the instruction and concluded, "I don't think there is any such thing," (referring to battered spouse syndrome) ... "I've already told them to place themselves in the same facts as shown by the evidence that have existed at the time that the defendant took the actions she took." Varie argues this conclusion was in error, asserting that the district court initially agreed to allow her to use the battered spouse syndrome defense in order to draw a distinction between first and second-degree murder and manslaughter. The district court made this statement:

But it appears to me at this point there is an issue which does relate to her mental condition at the time of the alleged incident, not directly by raising any kind of insanity defense, but by way of indicating that her intent may have been less serious than that normally included in first degree murder.

Varie contends that there was sufficient evidence presented to substantiate using the instruction.

### A. Standard of Review

■ Whether the jury has been properly instructed is a question of law over which this Court exercises free review. *State v. Jones,* 125 Idaho 477, 489, 873 P.2d 122, 134 (1994). This Court has held:

[a] defendant in a criminal action is entitled to have [the defendant's] legal theory of the case submitted to the jury under proper instructions. However, refusal of defendant's requested instructions allegedly dealing with [the defendant's] defense theory is not error where the proposed statement is either erroneous in its statement of the law, is not supported by the evidence or constitutes an impermissible comment on the evidence, or is adequately covered by other instructions given by the court.

*State v. Dambrell,* 120 Idaho 532, 541, 817 P.2d 646, 655 (1991), *citing State v. Johns,* 112 Idaho 873, 880–881, 736 P.2d 1327, 1334–35 (1987).

### B. The Requested Instruction

■ The district court did not abuse its discretion in limiting expert testimony regarding the diagnosis of battered spouse syndrome. Consequently, the jury did not hear any evidence specifically pertaining to that diagnosis. Instructions regarding the requirements for a finding of self-defense and instructions regarding intent and state of mind required for a conviction of murder were submitted to the jury. The district court acted properly in denying defense's request to include the battered spouse syndrome instruction to the jury.

## V.

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN SENTENCING VARIE TO A UNIFIED TERM OF THIRTY FIVE YEARS FOR THE OFFENSE OF SECOND DEGREE MURDER WITH THE USE OF A DEADLY WEAPON.

Varie argues that the district court abused its discretion in imposing her sentence, be-

cause she is a first time offender, she accepted responsibility for the shooting, she has a support system of friends and family, she has mental health problems and she has a low risk of re-offending.

## A. Standard Of Review

 Sentencing is within the trial court's discretion. The standard of review of a lower court's sentence is abuse of discretion. *State v. Cross*, 132 Idaho 667, 671, 978 P.2d 227, 231 (1999). In *Cross*, this Court held:

> Where reasonable minds could differ whether a sentence is excessive, this Court will not disturb the decision of the sentencing court. This Court will set aside the sentence only where reasonable minds could not differ as to the excessiveness of the sentence. *State v. Broadhead*, 120 Idaho 141, 145, 814 P.2d 401, 405 (1991). To determine whether the trial court abused its discretion, this Court reviews 'all of the facts and circumstances of the case.' *Id.* To prevail, the appellant must establish that, under any reasonable view of the facts, the sentence was excessive considering the objectives of criminal punishment. *State v. Wolfe*, 99 Idaho 382, 384, 582 P.2d 728, 730 (1978). Those objectives are '(1) protection of society; (2) deterrence of the individual and the public generally; (3) the possibility of rehabilitation; and (4) punishment or retribution for wrong-doing.' *Id.*

## B. The Sentence

 The jury convicted Varie of second-degree murder with use of a deadly weapon. Second-degree murder is punishable by imprisonment not less than ten years and the imprisonment may extend to life. I.C. § 18–4004. Varie was sentenced to a unified term of thirty-five years with seven years fixed. As this Court held in *Cross*, where reasonable minds could differ whether a sentence is excessive, this Court will not disturb the decision of the sentencing court. During the sentencing hearing, ten witnesses testified on behalf of the state and eight witnesses testified on behalf of Varie. Reasonable minds differed as to what punishment Varie should have received.

The transcript of Varie's sentencing reflects the district court considered Varie's circumstances. The district court specifically noted that Varie was abused, that she had no criminal record, that she was thought of by others as a kind and gentle person and that the crime "is an act grossly out of keeping with her personality and her normal way of dealing with things." The district court acknowledged that there were characteristics of Varie's personality which contributed to her actions and she needed significant intervention by others as well as counseling.

The district court also discussed the objectives of sentencing outlined in *Cross*, finding that although Varie was a person unlikely to present any ongoing risk to society, there is a recognized need for penalties for crimes committed as well as a recognized need for deterrence for such actions. *See Cross*, 132 Idaho at 671, 978 P.2d at 231.

It is clear that the district court recognized the difficulty of the situation and attempted to balance the competing factors and values in the case. There is no evidence that the district court abused its discretion.

## VI.

## CONCLUSION

The judgment of the district court is affirmed.

Chief Justice TROUT, Justices WALTERS, KIDWELL and EISMANN concur.