## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 38149

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 655 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: October 3, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| HILARIO GUEL, JR., | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael E. Wetherell, District Judge.

Judgment of conviction and unified sentence of twenty years, with a minimum period of confinement of ten years for domestic violence, attempted strangulation, violation of a no contact order and persistent violator enhancement, affirmed.

Nevin, Benjamin, McKay & Bartlett, LLP; Robyn A. Fyffe, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent. John C. McKinney argued.

_____

GRATTON, Chief Judge

Hilario Guel, Jr., appeals from the judgment of conviction for felony domestic violence, Idaho Code §§ 18-903, 18-918(2), attempted strangulation, I.C. § 18-923, violation of a no contact order, I.C. § 18-920, and persistent violator, I.C. § 19-2514. We affirm.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

Melissa Davidson became romantically involved with Guel in 2007 and subsequently moved into Guel's house. On July 8, 2009, Davidson and Guel had a verbal argument while at a local bar. Later, as the two were riding on Guel's motorcycle back to their residence, Davidson told Guel she wanted off the motorcycle, and began to get off while the motorcycle was still moving. Although Guel attempted to slow down, Davidson was thrown off the motorcycle. Guel then drove home while Davidson followed on foot. When Davidson arrived at the residence, Guel opened the door and Davidson screamed at him then went upstairs to her

1

bedroom and locked the door. Guel followed Davidson upstairs, kicked the door in, and entered the bedroom. In later statements made to the police, Davidson described the ensuing altercation:

> [Davidson] told me that a physical fight had ensued between Larry and her. A battery had occurred where he punched her in the face and had--what she estimated to be 16 to 17 times, included closed fist punching as well as open palm striking. She reported that during the course of the battery, Larry straddled her and she mimicked the strangulation. She closed her fist. Placed her knuckles in this fashion. Said that he applied his knuckles downward onto her throat restricting her ability to breathe.
> She said that this portion of the strangulation that she estimated occurred for approximately two minutes and during this course, this time frame, she was able to grab a Scentsy warmer candle and strike him on the side of his head in an effort to get away from him, which she reported to me did temporarily work.
> After striking him in the head with the Scentsy candle she said that she tried to call 911. He broke her phone. He actually broke two phones during the course of this. Then the battery continued. Escalated again to a second incident of attempted strangulation, which happened on the floor of the bedroom.
> She said at this point he used open hands to grab around her neck, apply pressure, diminishing her ability to breath. And she estimated that that occurred and lasted for approximately five minutes.

After the incident, Davidson was examined at the emergency room. The doctor concluded that Davidson had multiple bruises on her face and neck, including bruising and swelling around her left eye, a swollen upper lip, extensive bruising on both sides of her neck, and a broken nose.

As a result of the motorcycle incident, the State charged Guel with felony domestic violence and leaving the scene of an injury accident. The altercation at the house resulted in Guel being charged with another count of felony domestic violence, attempted strangulation, intentional destruction of a telecommunication line, and violation of a no contact order. The State also charged Guel with being a persistent violator. After a jury trial, Guel was convicted of felony domestic violence (for the house altercation), attempted strangulation, violation of a no contact order, and was found to be a persistent violator of the law. He was acquitted of the remaining charges.

The district court sentenced Guel on each of the convictions, all sentences to be served concurrently, resulting in a unified term of twenty years with ten years determinate. Guel timely appeals.

## II.

## ANALYSIS

Guel claims that the district court erred by: (1) requiring production of a letter that Guel wrote to Davidson regarding her testimony; (2) admitting expert testimony regarding a victim's tendency to recant or minimize in domestic violence cases; (3) admitting evidence of a prior domestic violence incident; and (4) precluding admission of evidence of a subsequent battery committed by the victim. Guel also asserts that cumulative error requires vacation of the convictions.

### A.     Production of a Letter Written by Guel to the Victim

A letter written by Guel was delivered to Davidson by Guel's first attorney after Guel was in custody. The letter set out what Davidson's testimony should be at trial in order to have the jury acquit Guel on all charges. Davidson subsequently met with one of Guel's newly-retained attorneys and gave him the letter. The State learned of the existence of the letter and filed a discovery motion, pursuant to Idaho Criminal Rule 16, for any and all letters in defense counsel's possession that were written to Davidson by Guel while he was incarcerated. Guel objected and, after a hearing on the State's motion to compel, the district court ordered Guel's attorneys to disclose the letter to the State. During the State's case-in-chief, the letter was admitted into evidence and Davidson also read the letter aloud to the jury.

Interpretation of court rules is a question of law reviewed de novo. *See State v. Moore*, 131 Idaho 814, 821, 965 P.2d 174, 181 (1998). Trial courts have broad discretion in determining whether or not to grant a motion to compel. *See* I.C.R. 16(k); *Kirk v. Ford Motor Co.*, 141 Idaho 697, 700, 116 P.3d 27, 30 (2005); *Storm v. Spaulding*, 137 Idaho 145, 149, 44 P.3d 1200, 1204 (Ct. App. 2002) (trial court's supervision of discovery is wholly discretionary). Such decisions will only be reversed when there has been a clear abuse of discretion. *See Kirk*, 141 Idaho at 701, 116 P.3d at 31. In determining whether a trial court abused its discretion, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

3

Guel contends that the district court erred when it required production of the letter because the letter was not subject to disclosure under I.C.R. 16. Rule 16(c)(1) provides that "[u]pon written request of the prosecuting attorney, the defendant shall permit the prosecutor to inspect and copy or photograph . . . papers, documents, . . . tangible objects or copies or portions thereof, which are within the possession, custody or control of the defendant, *and which the defendant intends to introduce in evidence at trial*" (emphasis added). Guel argues that because he had no intention of introducing the letter into evidence during trial, by the plain terms of the rule, he was not required to disclose the letter to the prosecution. The State acknowledges that Rule 16(c)(1) does not expressly require production of the letter. Nevertheless, the State argues: (1) that the district court properly compelled disclosure of the letter because Guel could not have prevented the State from obtaining the letter by having his attorney conceal the letter; and (2) an alternative means existed by which the State could have lawfully acquired the letter.

The district court essentially agreed with Guel that the plain language of Rule 16(c)(1) did not require production since the letter was not intended for use at trial by the defense. However, the district court ordered that the letter be produced because the result "taken to its logical conclusion is palpably absurd and clearly contrary to the Rule's intent." The district court noted that the Idaho Criminal Rules "are intended to provide for the just determination of every criminal proceeding . . . [and] shall be construed to secure simplicity in procedure, fairness in administration[.]" On the other hand, the district court stated that Guel's position "would allow any incriminating physical evidence, not compelled or otherwise privileged, to be harbored from discovery by the State, as long as the Defendant or his attorney reached the evidence first in time." Rather than promoting "just determination" or "fairness in administration" of a criminal proceeding, the district court found Guel's position "would promote the active interference and obstruction of prosecution investigations, placing gamesmanship before sound trial strategy and ethical obligations." The district court found that the letter was not expressly protected from disclosure by the rules regarding work product or attorney-client-privileged information. *See* I.C.R. 16(g) and (h). The district court also found that the letter did not raise any self-incrimination issues but constituted incriminating physical evidence. The district court concluded:

> While this Court finds the most proper procedure for obtaining possible evidence of a crime is through the warrant or subpoena process, and urges the State to utilize these tools rather than create future appealable issues, it finds a

reasonable interpretation of the rules of discovery would not protect [Guel] from disclosing this third-party communication.

As the district court noted, the Idaho Criminal Rules provide for warrants and subpoenas as ways to acquire evidence like the letter in this case. *See* I.C.R. 17, 41. So the court's conclusion that Guel's position would authorize the harboring of relevant evidence is not entirely accurate since means, other than Rule 16, are available to require production. It is true, however, that attorneys may not hide relevant evidence, nor may a perpetrator avoid production of such evidence by giving it to his attorney. *See State v. Dillon*, 93 Idaho 698, 471 P.2d 553 (1970), (attorney may not act as a depository for criminal evidence). The letter in this case was not protected from disclosure. First, Guel was in no way compelled to create the letter which, as the district court found, avoids any issues of self-incrimination. *See United States v. Hubbell*, 530 U.S. 27, 35-36 (2000) ("More relevant to this case is the settled proposition that a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege."). Second, the letter was intended for and delivered to a third party and, thus, the letter cannot be protected under the attorney-client privilege. *See* I.R.E. 502(a)(5); *Farr v. Mischler*, 129 Idaho 201, 207, 923 P.2d 446, 452 (1996) (To be a confidential communication, the communication must "not be intended to be disclosed to third persons."). In addition, the letter was not created by, or at the direction of, Guel's attorneys and thus does not constitute work product. Therefore, the letter was not protected by any privilege and was not expressly protected from disclosure under Rule 16.

In summary, the State's discovery request relied upon Rule 16(c) as its basis, but because Guel did not intend to introduce the letter into evidence, Rule 16(c) did not require production. On the other hand, the document was not expressly protected from disclosure under I.C.R. 16(g). In essence, the district court acknowledged that the document was not required to be disclosed under I.C.R. 16(c) but, since it was not expressly protected under I.C.R. 16(g), the court could, in its discretion, order production consistent with the policies behind the rules. Even if the district court erred when it compelled production, error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). As Guel acknowledges, his letter was subject to production by other means available to the State, and Guel's attorney was not authorized to harbor it. Consequently, any error by the district court was harmless.

5

**B.** **Expert Testimony Regarding the Tendency of Victims to Recant or Minimize in Domestic Violence Cases**

Prior to trial, the State gave notice of its intent to call an expert witness to explain the dynamics of domestic violence, including the reasons victims sometimes recant their initial reports of violence, and later minimize the violent nature of an abuser's conduct. After a hearing, the district court ruled that under Idaho Rule of Evidence 702 the State would be allowed to present such testimony, assuming a proper foundation was laid. During trial, the State's expert witness was qualified as an expert in domestic abuse and testified as anticipated.

Pursuant to Rule 702, expert testimony is admissible "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." The expert testimony, therefore, must inform the jury about a matter that is outside the common experience and knowledge of a lay juror, and assist the jury in deciding a material issue in the case. *State v. Wright*, 147 Idaho 150, 155, 206 P.3d 856, 861 (Ct. App. 2009) (citing *State v. Hester*, 114 Idaho 688, 694, 760 P.2d 27, 33 (1988)). However, even if evidence is admissible under I.R.E. 702, it may be subject to exclusion if its probative value is substantially outweighed by such factors as the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *See* I.R.E. 403; *Wright*, 147 Idaho at 155, 206 P.3d at 861.

Guel asserts that the expert's testimony was inadmissible because it merely explained factors and circumstances within the normal experience and understanding of lay jurors. Specifically, Guel argues that the reasons that a spouse or partner may later change his or her story regarding a battery in order to protect a loved one are within the understanding of the common juror. The district court concluded that recantation and minimization by domestic violence victims is not something the average juror would normally experience. The district court stated, in an exchange with defense counsel, that "there is a pattern in domestic violence cases that those of us who deal with them all the time know exist; that many domestic violence victims do recant." However, the court stated that "[t]he jury doesn't see it all the time." The court further noted that a juror who did have firsthand experience with domestic violence would not likely be able to serve as a juror in a domestic violence case. Therefore, the district court allowed the State to present the testimony because the information regarding domestic violence

6

would be outside the common experience of most jurors and because the jury would be assisted by the expert testimony.

Guel also argued that expert testimony was offered on the issue of Davidson's credibility, a function left solely to the jury. The district court found that the testimony was not objectionable merely because it collaterally concerned the issue of credibility. The district court determined that the testimony would assist the jury in evaluating the victim's credibility and specifically noted that the expert could not directly opine on Davidson's credibility. At trial, the State did not seek to elicit testimony from the expert witness as to any conclusions or opinions specifically regarding Davidson's credibility.

In *State v. Varie*, 135 Idaho 848, 26 P.3d 31 (2001), the Idaho Supreme Court agreed with the district court that expert testimony, general to the characteristics of domestic violence and the reaction of victims to such violence, was admissible. *Id*. at 855, 26 P.3d at 38. Expert testimony which addresses the "general progression" of a victim or witness, "as well as the behavior and characteristics of victim and offender during the progression through those phases," may be admissible. *State v. Dutt*, 139 Idaho 99, 104, 73 P.3d 112, 117 (Ct. App. 2003). This is especially the case where the expert does not link the general progression of the domestic abuse to the particular circumstances of the case. *Id.* In *Dutt*, the State called an expert witness to testify concerning the general progression of child sexual abuse through various phases, as well as the behavior and characteristics of victims and offenders during that progression. *Id.* "In her testimony, [the expert] did not link the general progression of child sexual abuse to the particular circumstances of the offenses with which Dutt was charged, and she offered no opinion specifically addressing the experiences or credibility of the victim." *Id.* We held that the district court did not abuse its discretion because the generalized testimony gave the jurors specialized knowledge that could assist them in evaluating the victim's credibility, and the expert did not testify concerning matters outside her demonstrated expertise. *Id.* at 105, 73 P.3d at 118.

A recent opinion of the Idaho Supreme Court makes it clear that this proffered testimony would not cross the line between admissible expert testimony and that which would invade the province of the jury. In *State v. Almaraz*, ___ Idaho ___, ___, ___ P.3d ___, ___ (May 31, 2012) *reh'g pending*, the district court allowed the defense to present expert testimony from a cognitive psychologist about the types of suggestive photo line-up procedures that can render eyewitness identification unreliable, but precluded the expert from testifying about the suggestiveness of the

photo identification procedure used during the police interview of an eyewitness on the ground that such testimony invaded the province of the jury. The Supreme Court held that the limitation was error, stating:

> The district court allowed [the expert] to testify about the proper guidelines and procedures that should be followed during police interviews and how certain types of conduct can affect one's memory. This Court finds that having [the expert] go through the audio recording of [the police officer's] interview with [the eyewitness] would have been helpful to the average juror's understanding of whether the interview comported with proper police procedures. The court should not overly restrict expert testimony that assists the jury. This Court finds that it would have assisted the jury to allow [the expert] to point out specific instances of suggestive conduct in [the police officer's] interview and to explain the nature and significance of certain overly suggestive acts, such as turning off the tape recorder in the middle of a crucial point during the interview. In reaching this holding, the Court still recognizes that an expert cannot opine to the accuracy of the eyewitness identification or the credibility of any witness as those matters are reserved for the jury.
>
> Nevertheless, testimony relating to the proper guidelines for conducting an accurate interview or lineup, whether or not those procedures were followed in the case at hand, and the consequences of non-compliance with those procedures does not invade the province of the jury.

*Id*. at _____, _____ P.3d _____.

The expert testimony admitted in this case was general in nature. The expert witness testified only as to domestic violence generally and domestic violence victims' tendency to recant or minimize. In its ruling, the district court expressly limited the testimony to general information, finding the testimony admissible "to the extent it does not directly pass on the credibility of the witness or attempt to present a diagnosis that the witness is suffering from battered spouse syndrome." In this case, the State did not offer any expert testimony beyond that deemed admissible by *Almaraz* and other Idaho precedent, and the district court here did not err in admitting the expert testimony.

**C.      Idaho Rule of Evidence 404(b)--Evidence of a Prior Incident of Domestic Violence**

Prior to trial, the State filed a notice of intent to introduce evidence, under I.R.E. 404(b), of a misdemeanor domestic battery Guel committed upon Davidson on June 2, 2009, "for the purpose of proving intent, absence of mistake or accident, and/or to rebut any claims of self-defense." The district court ruled that if Guel or his attorney "make mention of self-defense, mistake, or accident, either directly or indirectly in opening statement, during presentation of the

8

State's case in chief, or in presenting its defenses once the State has rested . . . it will place the specific intent element directly at issue and the State will be permitted to introduce evidence of the [d]efendant's conduct from June 2, 2009, in rebuttal."

Guel argues that his claim of self-defense did not place his intent to inflict traumatic injuries at issue. Rather, Guel asserts that self-defense only implicates the issue of justification, i.e., was the battery justified because Guel used reasonable force to protect himself against Davidson's violence? The State contends that evidence of Guel's misdemeanor domestic battery against Davidson is admissible under Rule 404(b) regardless of whether it is characterized as evidence of Guel's intent or to rebut his claim of justification in the context of self-defense.

Idaho Rule of Evidence 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall file and serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

This rule prohibits introduction of evidence of acts other than the crime for which a defendant is charged if the probative value of the evidence is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009); *State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002). Of course, evidence of a prior crime, wrong, or act may implicate a person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule.

When determining the admissibility of evidence to which a Rule 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the other acts that a reasonable jury could find the conduct actually occurred. If so, then the court must consider: (1) whether the other acts are relevant to a material disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009). On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the other acts if it is supported

by substantial and competent evidence in the record. *Parmer*, 147 Idaho at 214, 207 P.3d at 190. In this case, Guel does not challenge the existence of the domestic battery as an established fact. Therefore, we address only the relevancy and unfair prejudice issues. We exercise free review, however, of the trial court's relevancy determination. *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008). The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011).

Guel's argument ignores the fact that once Guel raised the issue of self-defense, the prior act evidence was relevant to show that Guel's actions were *not* justified. The evidence of the June 2009 incident showed a physical altercation between Guel and Davidson in which Davidson was outmatched. Guel was able to hold Davidson down and yet still proceeded to batter her during the incident. That evidence was relevant to: (1) whether or not Guel believed he was in imminent danger of bodily harm during the charged incident; and (2) whether or not Guel believed his actions were necessary to save himself. The prior act evidence was relevant to show that the battery was not justified, i.e., that Guel did not believe his actions were necessary or that he did not believe he was in imminent danger of bodily harm. Moreover, evidence of the prior domestic battery in which Guel had physically controlled Davidson, and yet still continued to batter her, would also aid the jury in determining whether or not Guel acted solely in response to the danger or had another motivation. Guel put his intent and motive directly at issue when he asserted his actions were justified as self-defense, and Guel's prior domestic battery was relevant to those material issues. Rule 404(b) provides a non-exclusive list of appropriate purposes for admitting other act evidence and does not specify the type of intent or whose intent may be established or rebutted by such evidence.[1]

Guel also argues that the evidence of the June 2, 2009, incident should have been excluded because any probative value was substantially outweighed by the risk of unfair prejudice. The district court noted the potential prejudice stating that the "obvious source o[f] prejudice will arise in the form of improper character or propensity application by the jury." However, the district court properly weighed the probative value against the risk of unfair

---

[1]    Despite any asserted distinction between intent to commit a crime and evidence disproving self-defense, a number of courts have allowed Rule 404(b) evidence to rebut a claim of self-defense generally. *Cf. Charles v. Hickman*, 228 F.3d 981, 986 (9th Cir. 2000).

prejudice and determined that the evidence was admissible. In addition, in an effort to mitigate any possible misapplication of the evidence by the jury, the district court agreed to provide a limiting instruction. Thus, the district court clearly perceived its decision as one of discretion, applied the proper legal standards, and reached its decision by an exercise of reason. Under the circumstances, the district court did not abuse its discretion.

**D.      Idaho Rule of Evidence 404(b)--Evidence of a Battery Committed by the Victim**

After the charged incident, in August 2009, Davidson allegedly battered her roommate, as well as two police officers who responded to the scene of the disturbance. Guel asserted below, as he does here, that evidence of the battery was relevant to show Davidson's violent character "which was relevant to support his self-defense claim that she was the first aggressor." The district court determined that Guel could offer opinion and reputation evidence, as well as evidence of specific prior incidents, but ruled that Guel would not be allowed to introduce evidence of the subsequent August incident. The district court concluded that because one of the elements of Guel's self-defense claim was that "the defendant must be aware of the alleged victim's propensity [for] violence," the victim's conduct subsequent to the charged incident was irrelevant. The State contends that the district court properly excluded the evidence of the August 2009 incident, although the evidence should have been excluded on the ground that Davidson's propensity for violence is not an "essential element" of the self-defense claim and is, therefore, not admissible under Rule 405(b).

Idaho Rule of Evidence 405 provides:

> (a)  Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
> (b)  Specific instances of conduct. In cases in which character or a trait of character of a person is an *essential element* of a charge, claim, or defense, proof may also be made of specific instances of the person's conduct.

(Emphasis added.) Thus, I.R.E. 405(b) allows for proof of a person's character through the introduction of evidence concerning specific instances of conduct in certain cases. *See State v. Custodio*, 136 Idaho 197, 204, 30 P.3d 975, 982 (Ct. App. 2001). However, this Court held in *Custodio* that a victim's propensity for violence does not constitute an "essential element" of a claim of self-defense. *Id.* at 204, 30 P.3d at 982. In *Custodio*, this Court stated:

11

The Ninth Circuit Court of Appeals addressed this issue in *United States v. Keiser*, 57 F.3d 847 (9th Cir. 1995). The court in *Keiser* determined that "the relevant question should be: would proof, or failure of proof, of the character trait by itself actually satisfy an element of the charge, claim, or defense? If not, then character is not essential and evidence should be limited to opinion of reputation." *Id.* at 856 (footnote omitted). The court in *Keiser* went on to hold that the victim's violent character did not constitute an essential element of a self-defense claim. *Id.* at 857. We agree. Proof of a victim's propensity for violence, standing alone, does not prove an element of a claim of self-defense. Proof of a victim's violent character does not show that the victim was the first aggressor in a particular conflict, nor does proof of a victim's passive demeanor foreclose the defendant from asserting a claim of self-defense.

Thus, although evidence relating to the victim's violent character was relevant for the purpose of inferring that the victims acted in conformity therewith on the morning in question, the victims' propensities for violence was not an essential element of Custodio's claim of self-defense. Therefore, Custodio has failed to show that the district court erred in excluding this evidence in the form of a specific instance of the victims' propensities for violence pursuant to Rule 405.

*Custodio*, 136 Idaho at 204, 30 P.3d at 982.

Guel acknowledges that the holding in *Custodio* is dispositive of this issue, but argues that the interpretation of I.R.E. 405 adopted by this Court should be overturned or disavowed. "When there is controlling precedent on questions of Idaho law 'the rule of stare decisis dictates that we follow it, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice.'" *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 592, 130 P.3d 1127, 1130 (2006) (quoting *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 77, 803 P.2d 978, 983 (1990)). *See also State v. Forbes*, 152 Idaho 849, 852, 275 P.3d 864, 867 (2012); *State v. Delling*, 152 Idaho 122, 131, 267 P.3d 709, 718 (2011). Guel argues that this Court should adopt a broader interpretation of Rule 405(b) which would only require that the evidence directly relate to an essential element of the charge, claim, or defense. In support of this contention, Guel cites *State v. Lewchuk*, 539 N.W.2d 847 (Neb. Ct. App. 1995), where the Nebraska Court of Appeals permitted a defendant to offer testimony of a victim's violent conduct, of which the defendant was unaware, to show that the victim's propensity for violence made it more likely that the victim was the initial aggressor. The court held that the victim's violent character was an essential element of the self-defense claim because "testimony about specific incidents of the victim's violent behavior was relevant to, and probative of, the question

12

of who was the first aggressor." *Id.* at 853-54; *see also State v. Dunson*, 433 N.W.2d 676, 680-81 (Iowa 1988) (holding that specific instances of conduct, occurring subsequent to assault for which defendant was charged, were admissible to show victim's propensity for violence in support of defendant's self-defense claim). However, there is also substantial support for the view adopted in *Keiser*. *See, e.g.*, *State v. Williams*, 685 P.2d 764, 766 (Ariz. Ct. App. 1984) (holding that victim's violent character was not essential element of self-defense because it was not "an operative fact which, under substantive law, determines the rights and liabilities of the parties").

The Supreme Court of New Jersey more recently undertook the analysis of this very issue and, like Idaho, adopted the *Keiser* analysis. *See State v. Jenewicz*, 940 A.2d 269, 281 (N.J. 2008). After reviewing the *Keiser* approach and that of *Lewchuk*, the court stated:

> The better view is that a victim's violent character is not an essential element of self-defense. An "essential element" for purposes of New Jersey Evidence Rule 405, extends only to those elements that a party must prove or disprove to make out a prima facie case for a claim or defense. An accused can assert self-defense successfully without offering any evidence regarding a victim's character. Therefore, character evidence cannot be regarded as "essential." In our view, those courts that have arrived at a contrary holding have founded their decisions on the fact that a victim's character for violence is "relevant," "probative," or "consequential" to the accused's theory of self-defense. Rule 405 imposes a stricter standard.

*Jenewicz* at 281. The reasoning adopted by this Court in *Custodio* is more consistent with the plain language of I.R.E. 405 than that used by the courts in *Lewchuk* and *Dunson*. Nor is this Court's decision an outlier; other state courts have adopted the *Keiser* analysis to determine "essential" elements for purposes of I.R.E. 405, or its equivalent. Consequently, we are not persuaded that *Custodio* must be overturned.

**E.     Cumulative Error**

Guel also contends that the cumulative error doctrine applies here, necessitating a reversal of his conviction. "Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. However, a necessary predicate to the application of the doctrine is a finding of more than one error." *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012) (quoting *State v. Perry*, 150 Idaho 209, 230, 245 P.3d 961, 982 (2010)). Guel has failed to demonstrate at least two errors, a

13

necessary predicate to the application of the cumulative error doctrine. *See Adamcik*, 152 Idaho at 483, 272 P.3d at 455.

## III.

## CONCLUSION

Guel has not demonstrated reversible error in the district court's order requiring production of the letter written by Guel to Davidson. The district court did not err in the evidentiary rulings allowing expert testimony regarding victims' tendency to recant or minimize domestic violence, admitting Rule 404(b) evidence of a prior incident of domestic violence, and prohibiting evidence of the subsequent battery committed by the victim. Therefore, Guel's judgments of conviction and sentences are affirmed.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**